843 So.2d 1157 (2003)
Earl PENN
v.
ST. TAMMANY PARISH SHERIFF'S OFFICE, et al.
No. 2002 CA 0893.
Court of Appeal of Louisiana, First Circuit.
April 2, 2003.
*1158 William E. Bradley, Prescott L. Barfield, Mandeville, Counsel for Plaintiff-Appellant Earl Penn.
R. Bradley Lewis, Mandeville, Counsel for Defendants-Appellees St. Tammany Parish Sheriff Jack Strain and Deputy Jeffrey Mayo.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
FITZSIMMONS, J.
Earl Penn appeals the grant of summary judgment by the court in favor of Jack Strain, Sheriff of St. Tammany Parish, and Jeffrey Mayo. This court affirms; however, we do not adopt the reasoning supplied by the district court from the bench.

PROCEDURAL POSTURE
Mr. Penn filed suit against the Parish of St. Tammany; Jack Strain, St. Tammany Parish Sheriff's Office; Jeffrey Mayo, St. Tammany Parish Jail Correction officer (collectively the "Parish"), as well as the City of Covington and Officer Stefan Montgomery, City of Covington Police officer (collectively the "City"). Mr. Penn's lawsuit alleged excessive force by the Parish when Deputy Mayo used an electronic shield against Mr. Penn's back and shocked him after Mr. Penn was forced against a metal wall at the St. Tammany Parish jail.
Covington Police Officer Montgomery arrested Mr. Penn and transported him to the St. Tammany Parish jail, where custody of Mr. Penn was assumed by St. Tammany Parish Deputy Mayo. Mr. Penn was later convicted of a battery on Officer Montgomery committed during the arrest. The Parish of St. Tammany was voluntarily dismissed without prejudice in a joint motion filed by the Parish of St. Tammany and Mr. Penn. The City moved for summary judgment on the basis of Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) and its progeny. *1159 The unopposed summary judgment was granted by the court to the City.
The Parish, thereafter, similarly moved for summary judgment on the basis of the holding in Heck v. Humphrey, supra, reasonableness of force, and qualified immunity. The district court granted the Parish's motion for summary judgment, stating in oral reasons issued from the bench that the court was "going to apply a strict interpretation of the Heck case because [Mr. Penn] was subsequently convicted of battery on a police officer and is precluded from asserting any claim."

DISCUSSION
In determining whether summary judgment is appropriate, appellate courts review evidence de novo, applying the same criteria that govern the lower court's determination of whether summary judgment is justified. Sanders v. Ashland Oil, Inc., 96-1715, p. 7 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1035, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. Summary judgment is favored, and it "is designed to secure the just, speedy and inexpensive determination of every action." La. C.C.P. art. 966 A(2). We first focus our attention on the holding in Heck and its application vel non to Mr. Penn's allegations.
In Heck, the United States Supreme Court held that a 42 U.S.C. § 1983 claim to recover damages for an allegedly unconstitutional conviction or imprisonment does not accrue until or unless the conviction or sentence is reversed. Heck, 512 U.S. at 486-487, 114 S.Ct. at 2372. Following the Court's explanation that a section 1983 claim for damages inextricably related to the viability of a conviction is not cognizable, the Court expressly limited the scope of Heck in the following language: "But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." Heck, 512 U.S. at 487, 114 S.Ct. at 2372-2373. In the case before this court, the conviction for battery committed upon the Covington police officer pursuant to Mr. Penn's arrest, is independent of the subsequent claim against the Parish officer for his use of an electric rod on Mr. Penn at the Parish prison. Applying the analysis established in Heck and its progeny, if Mr. Penn were to successfully prove the existence of a section 1983 violation by the Parish officer, such an action would not per se result in an invalidation of the judgment against Mr. Penn for the battery committed on the Covington police officer. Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995). Thus, this court cannot embrace the reasoning supplied by the district court in its dismissal of Mr. Penn's claim.
Nevertheless, we agree with the district court's grant of summary judgment because Mr. Penn failed to rebut the Parish's demonstration that it did not use excessive force against Mr. Penn. An excessive force assertion based on section 1983 is a federal constitutional claim that is analyzed via Fourth Amendment constitutional standards. Stroik v. Ponseti, 35 F.3d 155, 157 (5th Cir.1994), cert denied, 514 U.S. 1064, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995). The relationship of the amount of force used to the need presented, the extent of injury, and the motives of the officer determines whether the Parish exceeded the constitutional limits such that there was also an actionable physical abuse *1160 under 42 U.S.C. § 1983. Ross v. Sheriff of Lafourche Parish, 479 So.2d 506, 512 (La. App. 1st Cir.1985) (quoting Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir.1981)). If the officer's actions were grossly disproportionate to the need for action under the circumstances, rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under section 1983. Id. The plaintiff is thus required to show a significant injury that resulted from the use of objectively unreasonable force that was clearly excessive of the need. Reese v. Anderson, 926 F.2d 494, 500 (5th Cir.1991).
In conjunction with its motion for summary judgment, the Parish attached several affidavits attesting to the verbally abusive, uncooperative, and aggressive actions by Mr. Penn prior to his arrival at the Parish jail and when he was entering the jail premises. Deputy Mayo stated that Mr. Penn had repetitively yelled at him and had turned aggressively toward the officer after being told to move forward. Deputy Mayo indicated that he did not apply the electric shield until after Mr. Penn had yelled and become aggressive and Deputy Mayo had been unsuccessful in getting cooperation with verbal commands.
Deputy Sheriff Lawrence Elsensohn, Jr. assisted Deputy Mayo. Deputy Elsensohn witnessed Mr. Penn's verbally abusive, agitated attitude and his refusal to move forward when Deputy Mayo gave him several verbal commands. He attested to Mr. Penn's refusal to comply on each of these two occasions, even after Deputy Mayo approached him with the electric shield and advised Mr. Penn to stop resisting before using the shield. Instead, Mr. Penn started yelling aggressively and turned toward Deputy Mayo.
Officer Montgomery also attested to Mr. Penn's extreme violence and resistance as he and Police Officer Stephen Culotta attempted to place Mr. Penn under arrest. They required the assistance of a third person to handcuff and transport Mr. Penn, who continued to be verbally vulgar and to struggle with the deputies. The Covington police department alerted the officers at the Parish jail that the officers were en route with a combative prisoner. Officer Montgomery additionally observed Mr. Penn's recalcitrant and boisterous behavior at the Parish jail door, and he saw Deputy Mayo apply a burst of the electric shield to control combative and resistive behavior. He witnessed Deputy Mayo apply another short burst of electric shield after several unsuccessful vocal orders by the deputies when Mr. Penn began yelling and cursing at the deputies, creating a disturbance, and exciting other prisoners who were being booked. Officer Montgomery indicated that Deputy Mayo was attempting to control what was "becoming a possibly dangerous situation."
Officer Culotta stated that as he approached Mr. Penn for a traffic stop, Mr. Penn jumped up and hit him in the chest with his right elbow and then pushed him away. When he and Officer Montgomery attempted to handcuff Mr. Penn to place him into custody, Mr. Penn became extremely violent and resistive and attempted to flee. Even after Officer Montgomery sprayed Mr. Penn with a burst of pepper spray, he continued to resist and exhibit combative behavior.
The initial burden of proof clearly rests with the Parish as the movant. However, after the mover has properly supported the motion and carried the initial burden of proof, the non-moving party must submit evidence showing the existence of specific facts establishing a genuine issue of material fact. Scott v. McDaniel, 96-1509, *1161 p. 5 (La.App. 1 Cir. 5/9/97), 694 So.2d 1189, 1191-1192, writ denied, 97-1551 (La.9/26/97), 701 So.2d 991. If the non-moving party fails to rebut the initial proof by the moving party, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. arts. 966 and 967. Mr. Penn offered no affidavits or supporting documentation whatsoever to counter the documented evidence submitted on behalf of the Parish.
Mr. Penn's prior abrasive behavior during his arrest by the City, the risks and dangers faced by the officers in dealing with a person who was physically difficult to restrain, the brevity of the use of the electric shield, the attempt at alternative prior means of restraint without success, the lack of demonstrated residual injury to Mr. Penn, and the need to maintain control of a potentially unruly situation collectively justify the application of two short bursts of the electric shield by Deputy Mayo. Deputy Mayo's actions did not constitute excessive force under the circumstances or a violation of Mr. Penn's constitutional rights under section 1983.
Deputy Mayo's actions also fail to rise to the level of excessive force under state law. Louisiana Code of Criminal Procedure article 220 provides:
A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained. (Underlining added.)
The use of force by law enforcement officers is thus scrutinized by considering the "reasonable force" standard established by La.C.Cr.P. art. 220. Factors in determining whether the force exerted was reasonable under the circumstances entail: the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of arrest or subduing the arrestee; the physical strength, size and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment. See Kyle v. City of New Orleans, 353 So.2d 969, 973 (La.1977). Excessive force transforms ordinarily protected use of force into an actionable battery, rendering the defendant officer and his employer liable for damages. Ross, 479 So.2d at 511. Given the circumstances and Mr. Penn's behavior at the jail, the force applied by Deputy Mayo constituted ordinarily protected use of force.
Summary judgment is affirmed. All costs associated with this appeal are assessed to Earl Penn.
AFFIRMED.
GUIDRY, J., concurs in the result and assigns reasons.
GUIDRY, J. concurring.
I respectfully concur in the result of the majority. According to Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) "all claims that law enforcement officers have used excessive forcedeadly or notin the course of an arrest, investigatory stop, or other `seizure' of a free citizen should be analyzed under the Fourth Amendment and its `reasonableness' standard, rather than under a `substantive due process' approach." In applying Graham, the Fifth Circuit has used a three-part test for section 1983 excessive force claims, requiring a plaintiff to show (1) significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of *1162 which was (3) objectively unreasonable. Stroik v. Ponseti, 35 F.3d 155, 157 (5th Cir.1994), cert denied, 514 U.S. 1064, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995).
The "reasonableness inquiry" in an excessive force claim is an objective one, with the question being whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Reese v. Anderson, 926 F.2d 494, 500 (5th Cir.1991). While I agree with the majority that Mr. Penn failed to rebut the Parish's demonstration that the force used was reasonable and not excessive, I do not agree with the majority's inclusion of substantive due process criteria in reaching its determination. Therefore, I write separately to concur in the result reached by the majority.