STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-422

PAUL ZERBE

VERSUS

TOWN OF CARENCRO
CARENCRO POLICE DEPARTMENT
CHIEF TIMOTHY DUHON
ASSISTANT CHIEF BRENT BREAUX
TOBY LANDRY, OFF DUTY DEPUTY
JOHN DOE, UNKNOWN OFFICERS

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NUMBER 2002-1000 "D"
HONORABLE EDWARD D. RUBIN, PRESIDING

\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**SYLVIA R. COOKS**
**JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Marc T. Amy, and John B. Scofield,[*] Judges.

**REVERSED.**

S. Stephen Spring, II., ESQ.
8939 Jefferson Highway, Suite E
Baton Rouge, Louisiana 70809
(225) 932-9671
COUNSEL FOR APPELLANT:
    Paul Zerbe

Ann Garcia Dafford
405 West Main Street, Suite 101
Lafayette, Louisiana 70501
(337) 289-1051
COUNSEL FOR APPELLANT:
    Paul Zerbe

---

[*]John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge *Pro Tempore*.

John F. Wilkes
Lisa E. Mayer
Borne & Wilkes, LLP
200 West Congress Street, Suite 1000
P.O. Box 4305
Lafayette, Louisiana 70502-4305
(337) 232-1604
COUNSEL FOR APPELLEE:
        Timothy Duhon
        Brent Breaux
        City of Carencro

Joy C. Rabalais
G. Edward Williams, Jr.
Edwin G. Preis, Jr.
Preis, Kraft & Roy
102 Versailles Boulevard, Suite 400
P.O. Drawer 94-C
Lafayette, Louisiana 70509
(337) 237-6062
COUNSEL FOR APPELLEE:
        Toby Landry

Dawn L. Morrison
L. Lane Roy
102 Versailles Boulevard, Suite 400
P.O. Drawer 94-C
Lafayette, Louisiana 70509
(337) 237-6062
COUNSEL FOR APPELLEE:
        Toby Landry

**COOKS, Judge.**

## STATEMENT OF THE CASE

This lawsuit arises from an incident which occurred on Mardi Gras Day, February 25, 2001, in Carencro, Louisiana. The Plaintiff, Paul Zerbe, was maced, beaten, arrested and charged with two counts of battery upon a police officer and resisting arrest. The charges were later dismissed. Mr. Zerbe sued the City of Carencro, Chief of Police Timothy Duhon, Assistant Chief of Police, Brent Breaux, Deputy Toby Landry from the Lafayette Parish Sheriff's Office and Unknown Officers, John Doe. Mr. Zerbe sued under Louisiana law for false arrest, malicious prosecution, false imprisonment and defamation and under federal law for violation of his civil rights under 42 U.S.C. §1983 and 1985. The Defendants filed a Motion for Summary Judgment alleging there are no material facts in dispute. Mr. Zerbe submitted his deposition, along with affidavits from several eyewitnesses to the incident. The trial court, without written reasons, granted Defendants' Motion for Summary Judgment dismissing all of Mr. Zerbe's claims. We reverse.

## STATEMENT OF THE FACTS

The Plaintiff, Paul Zerbe, and several others, were gathered at the home of Charles Arceneaux to watch the parade and to partake in the Mardi Gras festivities in Carencro. This is a fact not in dispute. All other relevant facts, including who was at the scene of the incident and the sequence of events, are hotly contested. There is a video tape which, along with all other submitted evidence, is subject to several interpretations. Moreover, the record indicates the presence of police officers from all over the area, which further adds to the confusion of identifying exactly who was present at the scene. The Carencro police department sent a letter to all area law enforcement agencies asking for assistance on Mardi Gras Day. This practice is

3

customary for small towns when faced with a major event. The officers answering the call to service are not compensated. They report to the Carencro police department, sign in and receive their assignment. On Mardi Gras Day there were officers from Carencro, Broussard, Scott, Cankton and Lafayette Parish on duty in Carencro. Some were in uniform and some were plain clothed wearing a badge. From Mr. Zerbe's deposition testimony and the affidavits of individuals on the scene at the time, we are able to obtain an account of what may have happened in Carencro on that day.

On February 25, 2001, Mr. Zerbe arrived at the home of Mr. Arceneaux about 10:30 a.m. to barbeque and watch the Mardi Gras parade. Mr. Zerbe's wife, Lisa, and his four children were with him. His brother and sister-in-law from Michigan were also there, along with Fred Chaisson, his father-in-law. Mr. Arceneaux had invited several other guests. The parade started about 12:30 p.m. Shortly after the parade ended, a group of young men in a maroon pick-up truck stopped at the end of the driveway in front of Mr. Arceneaux's home. There was a disturbance of some kind. It is not entirely clear what caused the disturbance or what prompted Mr. Arceneaux to approach the young men. In any case, Mr. Arceneaux and the young men in the truck exchanged words. Mr. Zerbe testified he was standing about forty to fifty feet away at the time and heard the heated exchange. He walked over to the young men and asked them to move along. Lisa Zerbe stated she saw one of the men pull out a knife. Mr. Zerbe did not see the knife at this point. The young men drove off and Mr. Zerbe walked back down toward the house. The young men returned and Mr. Arceneaux went back towards the truck. At this point, Mr. Zerbe heard his wife say, "He has a knife. The guy in the truck has a knife." According to Mr. Zerbe's deposition testimony he, and his father-in-law, Fred Chaisson, and several others

4

attempted to coax Mr. Arceneaux away from the truck to avoid any further trouble. Officer Mark Brasseaux was nearby in plain clothes with a badge. When Officer Brasseaux observed the disturbance he began to yell "riot, riot" on the police radio. Officer Brasseaux ordered Mr. Arceneaux and Mr. Zerbe to move back, away from the truck. Several officers converged on the scene immediately. There were at least five or six officers around the truck. Mr. Zerbe observed his father-in-law, Fred Chaisson, trying to explain to Officer Elmo Begnaud, from the Cankton police department, what was going on. Mr. Zerbe testified the officer was not listening to his father-in-law and just kept screaming "get back, get back." At about the same time, Mr. Zerbe observed an officer in a Lafayette Parish Sheriff's Department uniform mace and strike Mr. Arceneaux. Then, Mr. Zerbe testified, Officer Begnaud picked up his baton to strike his father-in-law. Mr. Zerbe intervened to block the blow. He was then sprayed in the face with mace. He stumbled and knocked the eyeglasses from Officer Begnaud's face. At that point someone maced him again. He did not know who sprayed him and he was temporarily blinded by the chemical spray. He was then struck several times with police batons and fell to the ground clutching Officer Begnaud. He was hauled away in a police vehicle, booked and charged with two counts of battery upon a police officer and resisting arrest.

## LAW AND DISCUSSION

Mr. Zerbe has asserted state law claims for false arrest, malicious prosecution, false imprisonment and defamation and federal law claims under 42 U.S.C. §1983. Defendants contend Mr. Zerbe's suit must fail because the police had probable cause for his arrest and the force used to subdue him was reasonable under the circumstances. Additionally, Defendants contend Deputy Toby Landry of the Lafayette Parish Sheriff's Department was not involved in the altercation with Mr.

5

Zerbe. While the Defendants admit Deputy Landry was involved in the arrest of Mr. Arceneaux, they contend Deputy Landry was nowhere near Mr. Zerbe. In support of this assertion, counsel for Defendants relies on the video tape of the incident. Defendants contend the video tape shows Deputy Landry some distance from Mr. Zerbe. Defendants also contend the video tape shows Mr. Zerbe had Officer Begnaud in a "choke-hold" which, they contend, proves Mr. Zerbe acted belligerently and interfered with the officers' attempts to control a rowdy crowd. We have viewed the video tape and do not find it conclusive regarding the facts of the case. First, the video tape is incomplete and contains "gaps" when the user apparently turned off the recorder. Consequently, the video tape itself is the subject of legitimate dispute. Second, Mr. Zerbe disputes the characterization as a "choke-hold." He contends the officer "ran up into me, and I just – I didn't see anything. He ended up there in my arm, and I just held on to him" as he fell to the ground blinded by the mace. This version of the story is consistent with Officer Begnaud's affidavit testimony. Officer Begnaud stated: "Mr. Zerbe was apparently blinded and ran into me knocking my glasses off. When that happened, other police officers attempted to subdue Mr. Zerbe who was tangled up with me. . . . I do firmly believe that Mr. Zerbe did not intend to do any harm to me and bumped into me because he was temporarily blinded from the mace that was sprayed in his face by the Lafayette Parish Sheriffs Deputies." Third, it is undisputed the so-called "choke-hold" occurred after Mr. Zerbe was maced the first time. The officers must first establish probable cause for the initial assault upon Mr. Zerbe. Mr. Zerbe's resistance, after he was wrongfully seized, maced and beaten, cannot thereafter be used by the police to justify the arrest.

Mr. Zerbe has asserted a claim for false arrest. In order to recover on a false arrest claim, Mr. Zerbe must prove he was unlawfully detained by the police. *Tabora v. City of Kenner*, 94-613 (La.App. 5 Cir. 1/18/95), 650 So.2d 319, *writ denied,* 95-

0402 (La. 3/30/95), 651 So.2d 843. Stated differently, he must prove the police lacked probable cause for the arrest. If the police are not able to establish probable cause for their initial assault, Mr. Zerbe was justified in resisting the wrongful seizure. *McDaniel v. Green*, 99-1087 (La.App. 3 Cir. 12/22/99), 755 So.2d 942, *review denied*, 00-0200 (La. 3/24/00), 758 So.2d 151. Moreover, even if an officer has probable cause, the use of excessive force in effecting the arrest becomes an actionable claim for damages. *Penn v. St. Tammany Parish Sheriff's Office*, 02-0893 (La.App. 1 Cir. 4/2/03), 843 So.2d 1157; *Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977). "Excessive force transforms ordinarily protected use of force into an actionable battery, rendering the defendant officer and his employer liable for damages." *Penn v. St. Tammany Parish Sheriff's Office*, 2002-0893 (La.App. 1 Cir. 4/2/03), 843 So.2d 1157, 1161. The video tape reveals the officers continued to beat Mr. Zerbe after he was maced and on the ground. Moreover, the affidavits of several individuals who were present at Mr. Arceneaux's home raise genuine issues of fact as to whether the police had probable cause to arrest Mr. Zerbe, in the first place, whether the force used to subdue him was excessive and whether Mr. Zerbe was justified in resisting the assault. Lisa Zerbe stated:

> As we were standing in the yard after the parade, I saw my cousin, Charles Arceneaux, exchanging words with someone in the back of a truck who I saw pull a knife (the person in the truck) on Charles. The police were called to investigate.
> An older officer approached my father, Fred Chaisson, yelling at him and raised his billy club telling him to move.
> Paul Zerbe then walked up and put his arm up to prevent injury to my father. At that time I heard Mark Brasso yelling into his police radio "Riot, riot, riot." Suddenly there were police officers coming from every direction on foot, in cars, and four wheelers like roaches coming out of the woodwork.
> There did not appear that anyone was in charge and it was like a free for all.
> Paul was then struck from behind and maced by several officers. Immediately there were several officers beating Paul and macing him.
> I witnessed an officer from the Lafayette Parish Sheriff's Officer mace Paul in the face and strike him with his billy stick.

Russella Arceneaux stated in her affidavit:

As we were standing in my yard after the parade, I saw my son, Charles Arceneaux, exchanging words with someone in the back of a truck who I saw pull a knife (the person in the truck) on Charles. All of a sudden, the yard was filled with police. My daughter had pulled Charles away from the road and back into my yard. At that time, a police officer walked up and maced him in the face.

In the next instant there were police hitting Paul Zerbe and spraying mace in his face. Paul Zerbe was struck from behind and knocked to the ground.

I saw 2 or 3 officers holding Paul down on the ground and several others beating him. I never witnessed any conduct by Paul Zerbe at anytime that day to provoke such an attack. I never saw Paul Zerbe resist at any time that day.

Angelo Corceone stated:

I was present during the deposition of Deputy Toby Landry in the offices of Attorney John F. Wilkes, III on May 13, 2003.

I have carefully reviewed the Affidavits of Kimberly C. Prunty and Elmo Begnaud and the photographs attached.

The officer in the photographs wearing the tan top, dark bottom uniform of the Lafayette Parish Sheriff's Department is the same person who identified himself as Toby Landry at the deposition on May 13, 2003. This is the same officer in the photographs who has a billy club in one photography and a can of mace in his hand in another.

Kimberly C. Prunty stated in her affidavit:

The parade had ended and we were waiting for the traffic to clear to leave when an altercation over music happened with some occupants in a car who flashed a knife at Charles Arceneaux, who I know. The occupants jumped out of the truck and there was an exchange of words.

One officer I observed speaking with Pops who is Fred Chaisson about being too close to the traffic as well as speaking with the occupants of the car.

I was an eyewitness to an incident that happened on February 25, 2001, involving an individual by the name of PAUL ZERBE.

At that point there were officers involved with Charles Arceneaux. I observed one officer dressed in a uniform the same as the officer whose photograph is attached hereto come up from behind Paul Zerbe and struck Paul Zerbe with what appeared to be either a baton or asp without warning. Immediately after striking Paul Zerbe from behind and grabbing Paul, I immediately smelled mace or pepper spray in the air.

While beating Paul Zerbe the officers continued to spray Paul with mace or pepper spray between the initial spot next to the road all the way to the driveway where Paul was brought to the ground and beaten and sprayed again by additional officers who joined in with other officers while Paul was on the ground.

8

There was so much mace or pepper spray in the air from these officers that I had to put water in the eyes of our youngest child who was approximately two years old. Also, my other two children there were also crying from the spray in the air. I was crying from the spray in the air.

I wanted to leave the area to get medical assistance for my children and I was informed by one officer that if I moved I would be arrested.

This same officer who is in the attached photograph I heard use his radio and say that things were out of control even though things were not out of control while this same officer was arresting Charles Arceneaux.

I am positive that the police officer in the photograph attached to my affidavit is the same police man who went from Charles Arceneaux while he was on the ground and ran up behind Paul Zerbe and struck Paul for no reason.

John Zerbe, brother of Paul Zerbe, stated in his affidavit:

On February 25, 2001, I was at the Mardi Gras parades being held on North University Avenue in Carencro, Louisiana. The parade had finished and I was in the process of packing things up when I notice a disturbance in the back of a pick up truck with a group of white males. The police were only a few vehicles in front of this group. When the disturbance started the police showed up very quickly. Apparently there was an individual involved in the disturbance with the people in the truck who had pulled a knife.

The police started frisking the people in the truck for knives. Charles Arceneaux was upset at person with the knife and he ran towards the truck. The police seemed to have spooked by this and they sprayed him with some sort of tear gas or pepper spray. He turned his back to them in a stunned stated and I heard the police tell him to stop. He stopped and the police came up and doused him with pepper spray. This inflamed the crowd because a lot of people were trying to get the police to understand what had happened; however, the police weren't listening.

My brother's father in law was one of these people trying to tell the police that the man they were spraying with spray wasn't involved in the disturbance with the knife. As he tried to explain to one of the police, the policeman raised his billy club acting in a manner that indicated the policeman was about to strike my brother's father in law who is an elderly individual.

At this point, my brother, Paul Zerbe, came up to the police man and put his arm in between the policeman and my father in law and said "No" in an effort to fend off any blows the policeman looked like he was going to give my brother's father in law.

Another policeman came up behind Paul Zerbe and began striking him from behind in the legs with some sort of club. At that point the other policeman lunged at my brother with a club and my brother attempted to protect himself from being beaten further.

9

Additionally, the Defendants' assertion that Deputy Landry was not involved in Mr. Zerbe's beating is called into question by Officer Elmo Begnaud, a participant and eyewitness to the events. Officer Begnaud stated in his affidavit:

> I was an eyewitness to an incident that happened on February 25, 2001, involving an individual by the name of PAUL ZERBE.
> Mr. Zerbe was initially sprayed in the face with mace and grabbed by members of the Lafayette Parish Sheriff's Office, one of whom I can positively identify appearing in the attached photograph. This deputy appearing with a tan top and dark pants I understand is named, Toby Landry. I do not know him personally, but can positively testify herein that he was one of the Lafayette Parish Sheriff's deputies who first accosted Mr. Paul Zerbe by macing and/or grabbing him initially while also using police batons as well.
> After this deputy and others sprayed Mr. Zerbe in the face with mace and /or pepper spray, Mr. Zerbe was apparently blinded and ran into me knocking my glasses off.
> When that happened, other police officers attempted to subdue Mr. Zerbe who was tangled up with me. These additional officers who appear in the other attached photographs struck Mr. Zerbe with asps as depicted in the photographs.

We find, at the very least, Mr. Zerbe has raised genuine issues of fact regarding whether the police misread the situation and acted without probable cause and with excessive force in detaining Mr. Zerbe.

Mr. Zerbe has filed a claim for malicious prosecution. In order to support such a claim, Mr. Zerbe must show a bona fide termination of the charges against him, the absence of probable cause and malice on the part of the department. *Miller v. East Baton Rouge Sheriff's Department*, 551 So.2d 446 (La. 1987). When charges against and individual are dismissed "prior to trial, lack of probable cause and malice are presumed and the burden is on the defendant to prove he acted with probable cause and without malice." *Watson v. Church's Fried Chicken, Inc.*, 527 So.2d 979, 981 (La.App. 4 Cir. 1988), *writ denied*, 532 So.2d 135 (La. 1988). In this case, the facts indicate the officers failed to properly investigate the legitimacy of the charges even after Mr. Zerbe was brought to the station. Had a statement been obtained from Officer Begnaud and other townspeople at the scene, prior to booking, formal charges

may never have been filed and the police may have reached a different conclusion regarding the truth of the situation. The record also does not indicate the police obtained any statements from eyewitnesses other than police officers. We find Mr. Zerbe has presented enough facts to support a claim for malicious prosecution.

Mr. Zerbe has filed a claim for defamation. In *Watson v. Church's Fried Chicken, Inc.*, 527 So.2d 979, 981 (La.App. 4 Cir. 1988), the court allowed a plaintiff to recover damages for defamation when an employee of Church's Fried Chicken made a complaint which caused the plaintiff to be wrongly arrested for armed robbery. Mr. Zerbe contends Deputy Toby Landry, and other officers, made false statements at the time of his arrest or shortly thereafter which caused the prosecution to proceed against him. The prosecution was ultimately dropped when Officer Begnaud, and others, came forward with evidence which disputed Deputy Landry's and other officers' versions of the facts. We find Mr. Zerbe has presented enough facts to support a claim of defamation. Accordingly, we reverse the decision of the trial court granting summary judgment on the state law claims of false arrest, malicious prosecution, false imprisonment and defamation against the police officers.

The Defendants contend Mr. Zerbe cannot establish negligence on the part of the Town of Carencro under principles of vicarious liability. The Town argues neither Chief of Police, Timothy Duhon, nor Assistant Chief Brent Breaux were present during the incident. Chief of Police Timothy Duhon confirms he was riding in the parade on Mardi Gras Day. The Town of Carencro takes comfort in the fact the volunteer officers were in no way under Chief Duhon or Assistant Chief Breaux's supervision and control. However, it is this fact which may render the Town liable. It is undisputed Chief Duhon solicited armed police officers from other areas into service to assist the local department keep order. These officers were not trained in crowd control, supervised or placed under the direction and control of a Carencro

11

police officer. Each officer, as Chief Duhon testified, was operating under the policies of their individual department. Chief Duhon was not aware exactly how many officers reported for duty and "[t]hey left when they felt they could. . . .The only thing we told them was that they were having lunch served at eleven, if they wanted to come and eat." This type of lax, unstructured, unaccountable, police force, in which each officer was operating on his own, may have contributed to the mayhem which resulted on Mardi Gras Day. Several witnesses described the scene with the police as a "free for all." It appears from the submissions in the record the police may have overreacted to a small disturbance. There is little to suggest that a riot was occurring in Carencro. At the very least, these facts raise an actionable claim under Louisiana law against the Town of Carencro for negligent supervision.

Mr. Zerbe has asserted claims against the Town of Carencro under 42 U.S.C. §1983. He contends the Town of Carencro instituted a policy or custom which caused a deprivation of a constitutional right. See *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978). Mr. Zerbe argues the custom or policy by the Town of Carencro to invite armed officers into the town but fail to properly supervise their behavior rises to the level of an actionable claim under 42 U.S.C. §1983. Without deciding whether the plaintiff may prevail on this theory of recovery, we find, given the totality of the facts, he must be given the opportunity to fully develop this claim.

Mr. Zerbe has asserted a claim for damages under 42 U.S.C. §1983 arguing the police used excessive force when executing his arrest. *Penn v. St. Tammany Parish Sheriff's Office,* 2002-0893 (La.App. 1 Cir. 4/2/03), 843 So.2d 1157), addressed recovery of damages under 42 U.S.C. §1983 for use of excessive force. The *Penn* court stated:

An excessive force assertion based on section 1983 is a federal

12

constitutional claim that is analyzed via Fourth Amendment constitutional standards. [citations omited]. The relationship of the amount of force used to the need presented, the extent of injury, and the motives of the officer determines whether the Parish exceeded the constitutional limits such that there was also an actionable physical abuse under 42 U.S.C. §1983. [citations omitted]. If the officer's actions were grossly disproportionate to the need for action under the circumstances, rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under section 1983. *Id.* The plaintiff is thus required to show a significant injury that resulted from the use of objectively unreasonable force that was clearly excessive of the need. [citations omitted].

*Id*. at 1159-60.

We find Mr. Zerbe has presented enough facts to assert a claim for damages for use of excessive force under 42 U.S.C. §1983. Accordingly, we reverse the decision of the trial court dismissing Mr. Zerbe's claims under this provision. Mr. Zerbe has also filed a claim under 42 U.S.C. §1985 for conspiracy to deprive him of his constitutional rights. We do not find it necessary, at this time, to discuss the merits of the conspiracy claim because of our disposition of Mr. Zerbe's other claims.

Defendants contend Mr. Zerbe's appeal is frivolous and ask for an award of attorney fees to cover the costs of appeal. We find this assignment of error without merit.

**DECREE**

Based on the foregoing review of the record, we reverse the decision of the trial court dismissing the plaintiff's claims under state and federal law. All costs of this appeal are assessed to the Defendants.

**REVERSED.**