# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1232

**JURNELL SMITH**

**VERSUS**

**BOBBY GUIDROZ, ET AL.**

**\*\*\*\*\*\*\*\*\***

**APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, DOCKET NO. 09-C-6656-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE**
**\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS
JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.

**AFFIRMED; EXCEPTION OF *RES JUDICATA* DENIED.**

Jarvis J. Claiborne
P.O. Box 1033
814 N. Main Street
Opelousas, LA  70571-1033
(337) 948-4336
**ATTORNEY FOR PLAINTIFF/APPELLEE**
   Jurnell Smith

Kenneth M. Willis
P.O. Box 1033
814 N. Main Street
Opelousas, LA  70571-1033
(337) 948-4336
**ATTORNEY FOR PLAINTIFF/APPELLEE**
   Jurnell Smith

John F. Wilkes, III
Joy C. Rabalais
Ray F. Lucas, III
Tonya R. Smith
Borne & Wilkes, L.L.C.
200 West Congress Street, Suite 1000
P.O. Box 4305
Lafayette, LA  70502-4305
(337) 232-1604
**ATTORNEYS FOR DEFENDANTS/APPELLANTS**
The City of Eunice, Louisiana; and Officer Brian Rozas, Individually and
In His Capacity as a Police Officer for the City of Eunice

**COOKS, Judge.**

The City of Eunice and Officer Brian Rozas, individually and in his capacity as an officer for the City of Eunice, appeal the trial court's judgment finding them fifty percent at fault in causing injuries allegedly sustained by Plaintiff, Jurnell Smith, when he came upon a police stop while driving his vehicle home. Plaintiff was awarded $50,000.00 in general damages, $50,000.00 in damages for emotional distress, $2,983.00 in medical expenses and $21,732.00 in lost wages. Appellants contest both the finding of fault and the amounts awarded in damages. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On April 22, 2009, Deputy Eric Reed of the St. Landry Parish Sheriff's Department received a call from the Eunice Police Department (EPD) that officers were in pursuit of a suspect in a stabbing incident at a local bar. The suspect was heading north on Martin Luther King (M.L.K.) in Eunice. Deputy Reed drove towards M.L.K. on Highway 190 and saw blue lights flashing ahead of him as he approached a railroad intersection. Two EPD units had blocked in a vehicle. Deputy Reed pulled up and saw Officer Brian Rozas and Officer Peggy Sylvester of the EPD patting down a young male.

After exiting his vehicle, Deputy Reed was asked by Officer Kennedy, who had driven one of the two EPD units, if he would stay and help secure the scene with Officers Rozas and Sylvester, while he returned to Club Diamond where the stabbing occurred. Shortly after Deputy Reed arrived, a vehicle driven by Plaintiff, Jurnell Smith approached the scene. Plaintiff was driving home after having dinner in Ville Platte. The version of events told by Plaintiff and the officers as to what occurred next is at odds.

According to Plaintiff, as he approached the scene, he stopped and looked for an officer, but did not initially see one. He stated there was no one directing

3

traffic and Plaintiff attempted to ease his vehicle past the police units. He maintained his vehicle was partially on the shoulder as he proceeded past the police units. He testified he could not make a left turn onto Lloyd Street, where he lived, because one of the police units and the blocked-in vehicle were obstructing the roadway. Plaintiff stated he decided to go past the intersection with Lloyd Street and turn around and head back to turn right onto Lloyd Street.

Plaintiff testified he first saw Deputy Reed when he turned around, put his car in drive and went forward a few feet. He said he stopped and Deputy Reed approached his vehicle, yelling "What are you doing?" Plaintiff stated he told Deputy Reed he lived on Lloyd Street and pointed at the street sign. According to Plaintiff, Deputy Reed had his flashlight pointing at Plaintiff's face and his other hand on his gun. Plaintiff maintained he was never asked for any identification.

Plaintiff asserted Deputy Reed asked Plaintiff to exit the vehicle, but kept his leg pressed against the car door, preventing Plaintiff from complying. Deputy Reed again ordered Plaintiff to exit the vehicle, and Plaintiff responded to Deputy Reed that he was a taxpayer and paid his salary. Plaintiff reiterated to Deputy Reed that he had done nothing wrong.

At this point, Plaintiff noted Officer Rozas approached Plaintiff's vehicle with his gun drawn. Plaintiff stated Officer Rozas pointed the weapon at him and also ordered him to exit the vehicle. Plaintiff alleged at this point he was frightened for his safety. He noted the gun (which was in actuality a taser gun) was only a couple of feet away from him.

Although he believed he would be safer remaining in his vehicle, due to the officers' repeated requests, Plaintiff released his seatbelt. He then moved his hand up from the seat belt release toward the door handle in an attempt to open the door. Plaintiff asserted as he moved to his left to open the door, he was pepper sprayed and tased at the same time. He testified both officers then threw him on the

4

ground. Despite telling the officers not to tase him because he had a bad heart, he was tased again several times by Officer Rozas.

The officers then handcuffed Plaintiff, and Deputy Reed took Plaintiff to his unit and placed him in the backseat. According to Plaintiff, he was hyperventilating and began convulsing. Neither officer attended to him while he was displaying obvious signs of distress.

According to the officers, a different version of events took place that night. Deputy Reed stated he approached Plaintiff's vehicle as it re-approached the scene after turning around. According to Deputy Reed he asked Plaintiff where he was going, his name, and asked for his identification. Deputy Reed acknowledged he spoke in a very loud voice. Officer Rozas, who was standing to the side, heard Deputy Reed make those requests. Deputy Reed said Plaintiff told him he lives "right there." Deputy Reed stated he again asked Plaintiff for identification, and Plaintiff, who was agitated, did not comply, nor would he answer questions. Rather than answer the questions, Deputy Reed said plaintiff told him he was a captain at a correctional facility and spent twenty-four years in the Air Force.

Officer Rozas stated at this point he approached Plaintiff's vehicle and attempted to explain that the officers were pursuing a stabbing suspect and Plaintiff had advanced toward the scene. Officer Rozas also stated he asked Plaintiff to provide his name and driver's license, which he did not do. According to Officer Rozas, Plaintiff continued yelling, at which point Officer Rozas told Plaintiff he was under arrest. Officer Rozas asked Plaintiff to step out of the vehicle, which Plaintiff refused to do.

After several refusals to exit the vehicle, Officer Rozas stated he opened the door and attempted to pull Plaintiff out to take him into custody. According to Officer Rozas, Plaintiff resisted, slapping at Officer Rozas' hands and pushing him away. Officer Rozas told Plaintiff he would be tasered if he did not exit the

5

vehicle. Due to his continued refusal, Officer Rozas testified he had no choice but to deploy his taser.

Officer Rozas said the first taser attempt was not effective, and Plaintiff began yelling he had a bad heart. Plaintiff remained in the vehicle. Officer Rozas again tased Plaintiff, who finally exited the vehicle. According to the officers, upon exiting the vehicle Plaintiff displayed an aggressive manner, and would not get on the ground as ordered. At this point, Deputy Reed pepper sprayed Plaintiff in an effort to get him under control. Plaintiff was tased again by Officer Rozas. At this point, the officers were able to get Plaintiff to the ground and handcuff him. According to the officers, once Plaintiff was secured, all use of force stopped.

Plaintiff was eventually transported to the Eunice Police Department and charged with Interfering With the Duties of a Police Investigation and Resisting Arrest. Plaintiff stated as a result of the incident, he was terminated from his job as a shift manager at Pine Prairie Correctional Center within the same week. Plaintiff maintained he suffered physical injuries as a result of the incident. He began suffering from pain in his back, hip, shoulder and knees.

On October 2, 2009, a criminal trial was held against Plaintiff in Eunice City Court. He was found Not Guilty on the charge of Interfering With the Duties of a Police Investigation and Not Guilty on the charge of Resisting Arrest. The City Judge found Plaintiff had no intent to resist arrest or interfere with the duties of the officers.

On December 21, 2009, Plaintiff filed a personal injury lawsuit against several defendants: Bobby Guidroz, the Sheriff of the St. Landry Parish Sheriff's Department; St. Landry Parish Sheriff's Deputy Eric Reed; the City of Eunice; Brian Rozas, individually and in his capacity as an officer for the City of Eunice; Peggy Sylvester, individually and in her capacity as an officer for the City of Eunice; and Officer John Cormier, individually and in his capacity as an officer for

6

the City of Eunice. Plaintiff set forth claims for negligent injury and excessive force, false arrest, assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, malicious prosecution, and failure to provide medical treatment.

On December 10, 2010, Sheriff Guidroz and Deputy Reed filed a Motion for Summary Judgment asserting there were no genuine issues of fact material to Plaintiff's claims against them and they were entitled to summary judgment as a matter of law. Specifically, they argued all actions by Deputy Reed were "reasonable and justified under the circumstances." Similarly on February 25, 2011, Defendants the City of Eunice, Officer Brian Rozas, Officer Peggy Sylvester and Officer John Cormier filed a Motion for Summary Judgment asserting that no genuine issues of material fact existed and there is no evidence to support Plaintiff's claims that Defendants are liable to him. Both summary judgments were denied by the trial court, finding genuine issues of material fact existed.

A four-day bench trial was held. At the close of Plaintiff's case, Officer Cormier and Officer Sylvester were dismissed via a Motion for Involuntary Dismissal pursuant to La.Code Civ.P. art. 1672. After taking the matter under advisement, on June 28, 2012, the trial court issued lengthy written reasons for judgment finding in favor of Plaintiff. The trial court determined Plaintiff "had not committed any crime and the officers had no probable cause to arrest Plaintiff in this case." The trial court also found the officers used excessive force and Plaintiff incurred an "aggravation of [his] prior medical conditions." The trial court assessed Sheriff Guidroz and Deputy Reed fifty percent (50%) at fault and the City of Eunice and Officer Rozas fifty percent (50%) at fault in this case. Plaintiff was awarded $50,000.00 in general damages, $50,000.00 in damages for emotional distress, $2,983.00 in medical expenses and $21,732.00 in lost wages.

Sheriff Guidroz and Deputy Reed appealed the trial court's judgment. However, during the pendency of this appeal, a settlement as to all disputes was reached with Plaintiff. Thus, a Motion to Dismiss the appeal filed by Sheriff Guidroz and Deputy Reed was granted.

The City of Eunice and Officer Rozas (hereafter Defendants) timely appealed the trial court's judgment, asserting the following assignments of error:

1. The trial court erred in failing to find there was probable cause to arrest Plaintiff.

2. The trial court erred in failing to find Officer Rozas' use of force reasonable under the totality of the circumstances.

3. The trial court's award of damages was manifestly erroneous and an abuse of discretion.

4. The trial court erred in finding no contributory fault on the part of Plaintiff.

Defendants also filed a Peremptory Exception of *Res Judicata*, contending the issue of whether probable cause to arrest Plaintiff on April 22, 2009 was conclusively decided at the criminal trial in Eunice City Court and relitigation of that issue is barred by the doctrine of *res judicata*.

### I. *Finding of No Probable Cause to Arrest Plaintiff.*

In their first assignment of error, Defendants contend the trial court erred in finding Officer Rozas and Deputy Reed did not have probable cause to arrest Plaintiff.

First, Defendants argue the denial of Plaintiff's Motion for Acquittal at the criminal trial in Eunice City Court equated to a finding of probable cause to arrest that the trial court in the civil case was bound to follow. This is also the basis for Defendants' Peremptory Exception of *Res Judicata*. We find no merit in this argument. As Plaintiff notes, at no time during the criminal proceedings was there a probable cause hearing or a preliminary examination. Although denying the Motion for Acquittal, which Plaintiff made at the close of the State's presentation

8

of evidence, the City Court judge did not, at that time, have the opportunity to hear Plaintiff's evidence and testimony. The City Court judge specifically noted that, although she was denying the Motion for Acquittal, the court was "certainly here to hear [Plaintiff's] defense." After hearing Plaintiff's defense, the City Court judge ruled in Plaintiff's favor, *apparently finding Plaintiff's version of the events more credible than that of the officers*. To accept Defendants' argument that the denial of the Motion for Acquittal now ties the hands of the trial court in this civil matter, essentially would allow only the officer's testimony to be considered and not Plaintiff's on this controlling issue. This argument has no merit. Thus, we deny the Peremptory Exception of *Res Judicata*.

Defendants next contend the trial court found no probable cause existed to arrest based solely on the fact Plaintiff was found not guilty in his criminal trial. A review of the trial court's lengthy reasons for judgment reveals no basis for this assertion. The trial court set forth several reasons for finding no probable cause existed to arrest Plaintiff. The trial court indicated Plaintiff was simply trying to drive home when he came upon the scene, and was not stopped by the officers until after he proceeded slowly through the scene and safely turned his vehicle around. He notified the officers he lived right around the corner. Further, the trial court noted Plaintiff was not cited with any traffic violations and committed no crime. It was for these reasons the trial court found no probable cause to arrest existed, and not because the Eunice City Court acquitted Plaintiff.

Lastly, we find no merit in Defendants' argument that the trial court committed legal error in finding the officers had probable cause to stop Plaintiff and question him, but no probable cause to arrest him. The trial court found and Plaintiff concedes the officers had the right to conduct an investigatory stop of Plaintiff's vehicle in order to ascertain the nature of Plaintiff's presence in the surrounding area and to guarantee the officers' safety. However, the trial court

held that when Plaintiff informed the officers he was on his way home (which was very close to the scene) and Plaintiff was not charged with any traffic citations, the officers should have stopped their questioning of Plaintiff. Defendants' attempt, in hindsight, to argue Plaintiff's conduct, which allegedly involved the commission of certain traffic violations, served to provide the officers with probable cause to arrest Plaintiff is unpersuasive. However, the officers' testimony clearly evidences their initial reasons for arresting Plaintiff had nothing to with any traffic violation, which under ordinary conditions warrants only the issuing of a ticket. No traffic citations were ever issued to Plaintiff. Thus, we cannot say, in light of the trial court's factual findings, it was legal error for the trial court to find the officers lacked probable cause to arrest Plaintiff.[1]

## II. The Trial Court's Finding of Excessive Force.

Defendants contend the trial court committed manifest error in finding Officer Rozas' use of force was excessive and unreasonable. We disagree.

It is well established that on appeal, a trial court's findings of fact are reviewed pursuant to the manifest error standard of review; thus, the trial court's factual findings will not be set aside in the absence of manifest error or unless they are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Where there is conflicting testimony, inferences of fact should not be disturbed upon review even

---

[1] We also point out that even assuming the trial court erred in finding no probable cause existed for the arrest or that the arrest was not lawful, we would find no manifest error in its finding that the officers used excessive force in effectuating the arrest. This court in *Miller v. Village of Hornbeck*, 10-1539, p. 5 (La.App. 3 Cir. 5/11/11), 65 So.3d 784, 788, stated:

> An officer "may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained." La.Code Crim.P. art. 220. Whether the officers had reasonable suspicion to detain [Plaintiff] or probable cause to arrest him is of no moment. It is clear that regardless of whether reasonable suspicion exists to stop or probable cause exists to detain, "the use of excessive force in effecting the arrest becomes an actionable claim for damages." See *Zerbe v. Town of Carencro*, 04-422, p. 7 (La.App. 3 Cir. 10/6/04), 884 So.2d 1224, 1228, *writs denied*, 04-2719, 04-2735 (La.1/14/05), 889 So.2d 270, 271, and citing *Penn v. St. Tammany Sheriff's Office*, 02-893 (La.App. 1 Cir. 4/2/03), 843 So.2d 1157, and *Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977); see also *Patton v. Self*, 06-1029 (La.App. 3 Cir. 3/7/07), 952 So.2d 874.

though the reviewing court feels that its own evaluations and inferences are more reasonable. *Id.*; *Stobart v. State through DOTD*, 617 So.2d 880 (La.1993).

This Court recently in *Harvey v. City Of Eunice Police Dep't.*, 10-1228, pp. 3-4 (La.App. 3 Cir. 4/6/11), 62 So.3d 290, 293, discussed the standard under which excessive force claims are analyzed:

> Generally, excessive force claims fall under the duty/risk analysis for negligence claims. *Stroik v. Ponseti*, 96-2897 (La.9/9/97), 699 So.2d 1072. Under that standard, the plaintiff must prove "(1) the conduct in question was the cause-in-fact of the resulting harm; (2) [the] defendant owed a duty of care to plaintiff; (3) the requisite duty was breached by the defendant; [and] (4) the risk of harm was within the scope of protection afforded by the duty breached." *Id.* at 1077. In determining whether there was a breach of duty, the court should apply the factors enumerated in *Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977).
>
> In *Kyle*, 353 So.2d 969, the supreme court specifically addressed analysis of excessive force claims, stating:
>
>> The use of force when necessary to make an arrest is a legitimate police function. But if the officers use unreasonable or excessive force, they and their employer are liable for any injuries which result.
>>
>> Whether the force used is reasonable depends on the totality of the facts and circumstances in each case. A court must evaluate the officers' actions against those of ordinary, prudent and reasonable men placed in the same position as the officers and with the same knowledge as the officers. The degree of force is a factual issue. As such, the trial court's finding is entitled to great weight.
>>
>> Several factors to be considered in making this determination are the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment.

*Id.* at 972-73. (Citations Omitted.)

Defendants assert it is unclear whether the trial court found a battery was committed, or if it found under the *Kyle* factors that excessive force was used by

11

the officers. The trial court's written reasons for judgment clearly state "[c]onsidering all of the facts and circumstances in this case, the officers used excessive force in this case." Further, the trial court, when discussing the testimony of Plaintiff's expert, noted it used the *Kyle* factors in determining whether the officers employed excessive force.

Plaintiff presented the testimony of Dr. Lloyd Grafton, a police consultant who was accepted as an expert in the field of Law Enforcement Policy and Procedures. Dr. Grafton concluded both Officer Rozas and Deputy Reed were guilty of using excessive force. He noted the conflict in the testimony as to when Plaintiff was tased and pepper sprayed. He believed the officers should have reached into the car to get Plaintiff out, rather than use tasers and pepper spray. He opined that soft hand and hard hand techniques could have been used in this situation. He maintained that one step above the resistance is what is to be used or carried out by law enforcement in heated situations such as this. He noted that the use of tasers is only exceeded by the use of lethal force, due to the medical problems it can cause.

Dr. Grafton stated he considered the *Kyle* factors and noted Officer Rozas and Deputy Reed were unfamiliar with the character of Plaintiff so as to be alarmed by him. He also believed the danger in the case had lessened considerably by the time Plaintiff came upon the scene, as the suspect was in custody and any danger to the officers was non-existent. Further, no offense had been committed by Plaintiff, nor was he trying to flee. Lastly, Dr. Grafton believed there were alternative, less drastic measures that could have been used to take Plaintiff into custody. Dr. Grafton concluded under the *Kyle* factors, Officer Rozas and Deputy Reed employed excessive force considering the totality of the circumstances. The trial court agreed.

Dr. Grafton also noted it was a violation of procedure for the officers not to tape off the area. The suspect was under control and secured by the time Plaintiff came upon the scene, and there was sufficient time for officers to tape off the area. Dr. Grafton specifically noted one officer was conducting an inventory of the suspect's car and could have taped off the area. This basic procedure more than likely would have prevented the situation that followed when Plaintiff drove past the police units.

The trial court noted it reviewed and considered the testimony of the Defendants' expert, Mr. George Armbruster, a Post-Certified Peace Officer and Instructor, and Dr. Larry Gould, who believed both officers acted reasonably in this case and followed proper procedures.

Defendants ask this court to accept the version of facts offered by the officers as true and discount the Plaintiff's testimony. They point to contradictions in Plaintiff's testimony. The trial court noted there were conflicts in the officers' testimony as well, and recognized resolution of this case came down to which testimony was found more credible. The trial court concluded:

> This case comes down to who you believe. Who is credible or who was more credible.
>
> There were conflicting statements on both sides in this case. Plaintiff has some inconsistencies in some of his testimony. The officers had some inconsistencies in their testimony as well.
>
> The court finds that both Officers, Rozas and Reed overreacted in this case.
>
> Plaintiff testified that he did not see any officers when he arrived on the scene and subsequently proceeded slowly passed [sic] the police units partially in the road and the shoulder.
>
> Officers testified that they saw plaintiff pass through the scene but did not stop plaintiff.
>
> The court finds that initially there were four officers on the scene before Lt. Kennedy returned to Club Diamond. The officers having arrested a felony suspect and conducting an inventory on the

13

scene, could have easily taken two minutes to rope off or tape off the area to prevent any traffic from proceeding though the area.

In this case, plaintiff was not stopped by the officers until after [he] had proceeded through the scene and turned around to be able to turn right onto Lloyd Street where he lived.

He, plaintiff, was not cited for any traffic violations for proceeding through a crime scene or driving on the shoulder of the road.

Plaintiff had not committed any crime and the officers had no probable cause to arrest plaintiff in this case.

Plaintiff was minding his own business trying to get home. Plaintiff in this case is a law abiding citizen, had along military career and subsequently working in law enforcement as a correctional officer for a number of years.

. . .

At plaintiff's criminal trial before Judge Feucht of the Eunice City Court, she found the plaintiff, Jurnell Smith, not guilty of both charges. The Judge found that plaintiff had no intent to resist or interfere with the duties of the officers on the night in question.

This court finds that although the officers had the right to stop plaintiff and question plaintiff on the night in question, there was no probable cause to arrest plaintiff and take him into custody.

Plaintiff did not commit a crime and therefore, was falsely arrested. Under that scenario you can resist an unlawful arrest or a false arrest.

. . .

Plaintiff was tazed [sic] and drive stun[ned] in this case at least three times.

Plaintiff was told by Deputy Reed to stay in the car and then a few minutes later told by Officer Rozas to get out of the car. Plaintiff was approached by Officer Rozas with gun drawn in his face having committed no crimes.

Even if the officers had asked plaintiff for his ID at that point, plaintiff was fearing for his life. He had not committed a crime. He did not know what to do at that point. One officer said stay in the car and then another says get out of the car. Plaintiff's home was right there down the street.

Again, this court agrees with the expert opinion of the plaintiff in this case.

14

> Considering, all of the facts and circumstances in this case, the officers used excessive force in this case.

When, as here, the factual findings of the trial court are based on the credibility determinations of the witnesses, great deference must be afforded to the trial court's findings. Moreover, where there is conflicting testimony, inferences of fact should not be disturbed upon review even if the reviewing court feels that its own evaluations and inferences are more reasonable. *Stobart*, 617 So.2d 880; *Rosell*, 549 So.2d 840. After a thorough review of the record, we find sufficient evidence in the record to support the trial court's conclusion that Officer Rozas and Deputy Reed employed excessive force in this case.

### III. The Trial Court's Damage Awards.

Defendants contend the trial court abused its discretion in the awards for general damages, emotional distress, medical expense and lost wages.

The trial court awarded Plaintiff $50,000.00 in general damages. It is well-settled that vast discretion is accorded to the trier of fact in fixing general damage awards. La.Civ.Code art. 2324.1; *Howard v. Union Carbide Corp.*, 09-2750 (La. 10/19/10), 50 So.3d 1251. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994). "An appellate court may not overturn an award for damages unless it is so out of proportion to the injury complained of that it shocks the conscience." *Harrington v. Wilson*, 08-544, p. 16 (La.App. 5 Cir. 1/13/09), 8 So.3d 30, 40. We find no basis to overturn the trial court's general damage award herein.

Defendants point out Plaintiff had pre-existing physical problems, as well as being involved in an automobile accident approximately seven months after the incident in question that "compounded" the injuries suffered therein. The trial court specifically noted Plaintiff had "some medical issues over his years of service in the military" and that Plaintiff "suffered an aggravation of [his] prior medical conditions." The trial court also noted the automobile accident. Thus, the trial court was aware of and considered Plaintiff's past medical history.

The record supports the finding that Plaintiff sustained physical injuries as a result of the April 22, 2009 incident. There is no dispute Plaintiff endured excruciating pain as a result of the taser and pepper spray used on him. Immediately after the incident, Plaintiff went to Acadiana Medical Center for a bruised right arm and elbow. Plaintiff also noted he suffered significant pain in both knees. Plaintiff testified at trial that he still endured pain in his back, right elbow and knees. It was established at trial that Plaintiff did have prior problems with both knees, as well as some arthritis and heart disease. Thus, the trial court correctly found Plaintiff suffered an aggravation of his prior medical conditions.

The trial court also found Plaintiff suffered a loss of enjoyment of life as a result of the incident. Plaintiff testified he has increased difficulty sleeping, does not fish as often as he used to due to his injuries, nor does he go out to movies and restaurants.

After reviewing the record, we cannot say the trial court abused its vast discretion in awarding Plaintiff $50,000.00 for his general damages.

Defendants also contend the trial court abused its discretion in awarding $50,000.00 in damages for emotional distress. The primary basis for this argument by Defendants is set forth in brief as follows:

> Regarding emotional damages, [Plaintiff] only had **one evaluation** with Dr. Lyle LeCorgne on May 9, 2009. On deposition, Dr. LeCorgne testified since [Plaintiff] only had one visit with no

16

follow up and had relayed other traumatic events in his life. As such, Dr. LeCorgne could not, with certainty, discern the extent to which one incident was causing the symptomology which [Plaintiff] relayed to Dr. LeCorgne, or whether the previous events were overlaying and causing his symptomology. Therefore, as a matter of law, plaintiff failed to prove serious mental injury resulting from his lawful arrest, and failed to prove any medical causation.

Plaintiff argues Defendants' assertion that he had only "one evaluation" with Dr. LeCorgne is incorrect. Plaintiff testified he saw Dr. LeCorgne on May 9, 2009, February 25, 2011, March 14, 2011, April 13, 2011, and April 28, 2011. The trial court noted in its written reasons that "[P]laintiff saw Dr. LeCorgne on many occasions." It is correct that Plaintiff had only treated with Dr. LeCorgne once on the date Dr. LeCorgne was deposed; however, it was not disputed by Defendants at trial that Plaintiff treated with Dr. LeCorgne on several occasions after the date of the deposition.

Dr. LeCorgne did testify in his deposition that at the initial evaluation, Plaintiff was having repeated intrusive recollections of the April 22, 2009 incident. Dr. LeCorgne testified Plaintiff was "feeling a tremendous amount of anxiety," and Plaintiff "became tearful on a couple of occasions as he related what happened. . . . he was very disturbed by it."

Plaintiff testified at trial as to emotional problems he endured as a result of the incident in question. The trial court noted in its' reasons that Plaintiff "testified that when he goes home every day and pass[es] the area where everything happened, he can see the officers [tasering] him and that causes him emotional distress. It is on his mind daily according to his testimony."

The trial court clearly found as credible Plaintiff's testimony that he endured emotional problems related to an incident where he was tasered several times, pepper sprayed, and falsely arrested, ultimately leading to his termination from his employment. We find no manifest error in the trial court's determination that Plaintiff established his entitlement to damages for emotional distress.

17

We also find no merit in Defendants' argument that the trial court manifestly erred in rendering an award for lost wages. Defendants contend Plaintiff was not terminated from his job due to the April 22, 2009 incident, but instead was laid off due to a reduction in manpower at Pine Prairie Correctional center. Defendants also assert a contributing factor to Plaintiff's being laid off was a finding that he used excessive force against an inmate under his control.

Plaintiff testified on cross-examination concerning his alleged use of excessive force against an inmate. Plaintiff maintained he used the necessary force to control the inmate. The trial court was aware of the incident, mentioning it in its written reasons. Plaintiff also testified he was specifically told by the Warden at Pine Prairie that he was being let go due to the April 22, 2009 incident. The trial court clearly found Plaintiff's testimony in this regard credible, undoubtedly in part because Plaintiff lost his job the week after the incident in question occurred. We cannot say the trial court manifestly erred in awarding Plaintiff damages for lost wages.

We also find no merit in Defendants' argument that medical specials should not have been awarded. Defendants base this contention on the previously rejected argument that the officers were not guilty of excessive force, thus Defendants were not liable for the medical expenses.

### IV. *Contributory Fault.*

Defendants argue, even if this Court finds a false arrest was made and excessive force was used, the trial court erred in not assessing some percentage of comparative fault to Plaintiff.

The allocation of comparative fault is a factual matter within the discretion of the trial court, and its determination must not be disturbed on appeal in the absence of manifest error. *Benoit v. Hartford Cas. Ins. Co.*, 478 So.2d 707 (La.App. 3 Cir. 1985), *writ denied*, 480 So.2d 745 (La.1986); *O'Riley v. City of*

18

*Shreveport*, 30,107 (La.App. 2 Cir. 1/23/98), 706 So.2d 213, *writ denied*, 98-0752 (La. 5/1/98), 718 So.2d 418. Thus, the issue to be resolved is not whether the trial court was right or wrong, but whether its conclusion was a reasonable one. *Stobart*, 617 So.2d 880.

The trial court assessed fault equally to Officer Rozas and Deputy Reed and declined to place any on Plaintiff. The trial court noted Plaintiff was simply trying to drive home and slowly passed the vehicles (which was only able to occur due to the officers' failure to tape off the area) initially before turning around. Plaintiff was then approached by Officer Rozas who had his gun drawn. The trial court also found Plaintiff was given contrary instructions by the officers and was unsure which officer's command to follow. Although fearing for his safety, Plaintiff decided to open the door and while reaching to do so, was tasered and pepper sprayed, forcibly removed from his vehicle and taken to the ground. He was then tasered several more times. Thus, there is sufficient evidence in the record to support the trial court's conclusion that the officers' actions were the sole cause of the incident.

## DECREE

For the above reasons, the trial court's judgment is affirmed. Defendants' Peremptory Exception of *Res Judicata* is denied. All costs of this appeal are assessed to Defendants-Appellants, the City of Eunice and Officer Brian Rozas.

**AFFIRMED; EXCEPTION OF *RES JUDICATA* DENIED.**