# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1029

**MARY SMITH PATTON**

**VERSUS**

**DAVID SELF AND WILLIAM HADLOCK**

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, DOCKET NO. 55,424
HONORABLE STEPHEN B. BEASLEY, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Oswald A. Decuir, Judges.

**AFFIRMED.**

Anselm N. Nwokorie
Brian G. Smith
Tikisha Y. Smith
Smith & Nwokorie
120 West Madison Aveneue
P.O. Box 1182
Bastrop, LA  71220
(318) 283-2500
COUNSEL FOR PLAINTIFF/APPELLEE:
    Mary Smith Patton


Ronald J. Fiorenza
H. Bradford Calvit
Provosty, Sadler, deLaunay, Fiorenza & Sobel
934 Third Street, Suite 800
P.O. Drawer 1791
Alexandria, LA  71309-1791
(318) 445-3631
COUNSEL FOR DEFENDANT/APPELLANT:
    David Self and William Hadlock

**COOKS, Judge.**

The Defendants, David Self and William Hadlock, appeal the trial court's judgment which found the rights of Plaintiff, Mary Smith Patton, were violated during the arrest of Plaintiff for traffic infractions. The trial court awarded Plaintiff $20,000.00 for the violation of her civil liberties and any other damages suffered. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

On September 29, 2001 at approximately 2:30 a.m., the Plaintiff, Mary Smith Patton, was driving her pick-up truck west on San Antonio Avenue in Many, Louisiana. Officers David Self and William Hadlock of the Many Police Department stated they observed Plaintiff driving off the right edge of the roadway and then crossing the centerline. Officer Hadlock had been alerted that a sedan-type automobile was being driven in an improper manner, and was dispatched to that immediate area when he saw Plaintiff's alleged traffic infractions. Officer Self was driving east on San Antonio Avenue to meet with Officer Hadlock when he observed Plaintiff's vehicle.

Officer Self made a U-turn in the parking lot where Officer Hadlock's police unit was sitting and began following Plaintiff's mid-sized red pick-up truck, with Officer Hadlock following behind. The Officers observed Plaintiff make a right at the intersection of Church Street and San Antonio Avenue[1], continue down San Antonio Avenue and cross the center line again. At that point, Officer Self activated his lights to signal to Plaintiff to pull over. Plaintiff slowed and pulled over onto the right parking lane and curb of San Antonio Avenue immediately before Sorelle Street.

---

[1] San Antonio Avenue makes a 90-degree right turn at its intersection with Church Street. At this intersection, one may continue forward onto Church Street or turn right continuing down San Antonio Avenue.

She then slowly turned off of San Antonio Avenue onto Sorelle Street and stopped her vehicle when it became parallel with the curb of Sorelle Street.

Both officers then approached the vehicle and instructed Plaintiff to exit the truck. Both officers stated that as they approached the vehicle they detected the odor of alcohol coming from the cabin of the truck. They also stated Plaintiff had slurred speech and bloodshot eyes. Plaintiff remained in the vehicle and repeatedly asked through her rolled down window why she had been stopped. The officers continued to verbally instruct the Plaintiff to exit the vehicle. Plaintiff rolled her window back up to a gap of about three inches, locked the doors and remained inside. The officers became more aggressive in their demands for Plaintiff to exit the vehicle. Officer Self then shouted at Plaintiff to "look at me!" When Plaintiff looked toward him, Officer Self quickly sprayed pepper spray through the gap in the window. Eventually, Plaintiff unlocked the door and was quickly grabbed by the officers. She continued to ask the officers why she was being stopped, but did verbally assert that she would exit the vehicle. Before being allowed to exit, Plaintiff was physically removed by the officers and forced to the ground, face down, and arrested for driving while intoxicated, failure to drive on the right side of the road, resisting an officer, and for running a red light.[2] No field sobriety test was executed and Plaintiff refused to submit to a breathalyzer test at the Many Police Department.

The stop and arrest was recorded by video camera mounted on the dashboard of Officer Self's vehicle. However, the alleged traffic violations giving rise to the stop were not on video tape. Plaintiff did not admit to the alleged traffic violations

---

[2] At her criminal trial, Plaintiff was found guilty only of violating La.R.S. 32:71, Driving on Right Side of Road, based on the officers' testimony. She was found not guilty of the charges of Operating a Vehicle While Intoxicated (La.R.S. 14:98), Resisting an Officer (La.R.S. 14:108), and Obedience To and Required Traffic-Control Devices (La.R.S. 32:231).

and chose to go to court to oppose them.

A few days prior to her criminal trial on the traffic violations, Plaintiff complained to the district attorney over the actions of the defendants during the arrest. No action was taken.

On January 23, 2002, the various traffic offenses were tried and heard in the district court. The district court judge found plaintiff guilty of crossing the center line, but found her not guilty of the other offenses. As there was no video of the alleged driving infraction, the conviction was based on the testimony of the arresting officers.

The following day, the Louisiana Department of Public Safety, Office of State Police, began investigating plaintiff's allegations of police misconduct. A report was issued finding the complaint was unfounded and that the officers were left with "no option other than physical force to effect the arrest."

On September 20, 2002, Plaintiff filed a suit for damages suffered as a result of the actions of Officers Self and Hadlock, who were named as defendants. Plaintiff argued that "during the arrest process, petitioner was sprayed with a chemical, forcibly removed from her vehicle and thrown to the ground." All of these actions, Plaintiff contended, were "unwarranted and excessive." The petition alleged Plaintiff suffered "personal injuries including to her neck, back, hip, thigh, knee and eye."

The suit went to trial on May 4, 2006. The trial court gave extensive, written reasons for finding in favor of Plaintiff. It held that the Defendants did not have probable cause to stop Plaintiff, and then used excessive force to effectuate the arrest. After determining that there was no probable cause to stop Plaintiff, the trial court addressed the excessive force claim:

> These findings render baseless, and heighten to a more egregious
> degree, the excessive use of force by the Defendants as spraying

Plaintiff with pepper spray, pulling her out of the vehicle against her will and throwing her to the ground to be handcuffed. Curiously, the other officers in the video did not seem to share the same measure of concern over the Plaintiff. In the Court's opinion, spraying her with pepper spray while she was locked in a truck was void of logic. To do so to a suspect under these conditions does not pop locks on the vehicle doors or morph car windows into rice paper. Plaintiff posed no physical threat whatsoever to the officers necessitating deployment of pepper spray and by doing so did they abuse their police power given to them to protect the City of Many while its residents slept. The pepper spray also doomed their opportunity to conduct a field sobriety test before the impartial eye of the camera giving their allegations of intoxication a chance at credibility. After Plaintiff unlocked the door and was still blinded and at the height of the burning effects of the spray upon her eyes, nose and throat, she resisted further because, in this Court's view, she was disoriented under the circumstances and unable to maneuver herself out of the truck. The Defendants, while trying to pull her from the vehicle, continued their directives to exit, to which she responded, "OK, I need a minute. . ." Plaintiff consented by this point, but the officers, likely influenced by anger, chose to throw the Plaintiff to the ground, face down, absent any sign of threat to officer safety. Defendants claim she began "reaching to her right. . ." when locked inside the vehicle, but this Court finds this allegation untruthful so as to account for their use of force. Viewed in this light, the brutality displayed was excessive and motivated by notions other than officer safety.

A judgment was entered in favor of Plaintiff finding the Defendants liable *in solido* for all damages arising from the "unlawful traffic stop and arrest." The trial court set Plaintiff's damages "at the sum of TWENTY THOUSAND DOLLARS (US $20,000.00), together with legal interest from date of judicial demand and for all costs incurred." Defendants have appealed the judgment.

**ANALYSIS**

Defendants first contend the trial court erred, as a matter of law, in determining that the arrest complained of by plaintiff was without probable cause. Defendants argue that because plaintiff was convicted on one of the charges it "unequivocally establishes that the arrest was lawful and that [plaintiff] cannot establish the lack of probable cause for the arrest." The record does indicate that plaintiff was convicted of violating La.R.S. 32:71, Driving on Right Side of Road, based on the officers'

-4-

testimony.

We note Plaintiff's petition did not claim or allege false arrest; but, instead was based on defendants' use of excessive force. Although the trial court did find the stop of Plaintiff was made without probable cause and, thus, the arrest unlawful, he did indicate that even if the arrest were lawful, excessive force was used by the officers to effectuate the arrest. The trial court stated:

> Academically, had this Court found that this traffic stop was lawful, it would remain deeply disturbing to believe that mere misdemeanor traffic offenses, offenses *malum prohibitum*, even those as serious as driving while intoxicated, could result in such unprovoked acts of police aggression. It troubles this Court, nay, *any* Court, to see officers forcibly dragging citizens, under cover of night, out of their vehicles during a traffic stop because they cross a center or fog line or ride up on the shoulder of the road.

The law is clear that "even if an officer has probable cause, the use of excessive force in effecting the arrest becomes an actionable claim for damages." *Zerbe v. Town of Carencro*, 04-422, p. 5 (La.App. 3 Cir. 10/6/04), 884 So.2d 1224, 1228, *citing Penn v. St. Tammany Parish Sheriff's Office*, 02-893 (La.App. 1 Cir. 4/2/03), 843 So.2d 1157. "Excessive force transforms ordinarily protected use of force into an actionable battery, rendering the defendant officer and his employer liable for damages." *Penn v. St. Tammany Parish Sheriff's Office*, 843 So.2d at 1161. Therefore, even if accepting Defendants' argument that the conviction on the one charge of crossing the centerline precludes any question as to whether probable cause existed, and correspondingly whether there was a false arrest, Plaintiff was not prevented from bringing her suit for excessive force.[3]

A determination of excessive or unnecessary force is a finding of fact which

---

[3] Defendants also argued the trial judge erred when he visited the scene of the alleged traffic infractions. This assignment of error solely pertained to the false arrest issue. As we find no need to address that issue, this assignment of error is rendered moot.

may not be disturbed unless: (1) the record evidence does not furnish a sufficient basis for the finding; or (2) that finding is clearly wrong. *See Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978); *Saucier v. Players Lake Charles, LLC*, 99-1196 (La.App. 3 Cir. 12/22/99), 751 So.2d 312. In *Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977), the supreme court set forth several factors to consider in making a determination of whether the force used by a police officer to effect an arrest was reasonable under the circumstances. The factors include: (1) the known character of the arrestee; (2) the risks and dangers faced by the officer; (3) the nature of the offense or behavior involved; (4) the chance of escape if the particular means are not employed; (5) the existence of alternative methods of arrest or subduing the arrestee; (6) the physical size, strength and weaponry of the officers as compared to that of the arrestee; and (7) the exigencies of the moment.

Under the facts and circumstances of this particular case, we must determine if the trial court's determination that Officers Self and Hadlock used unreasonable or excessive force is manifestly erroneous or clearly wrong. In this determination we need not rely merely on the testimony of the witnesses, but have the advantage of a videotape of the events in question.

After a careful review of the entire record, we find the trial court did not err in finding Officers Self and Hadlock did not act reasonably under the circumstances. We direct our attention to the first *Kyle* factor. Defendants argue Plaintiff was "driving erratically, apparently under the influence of alcohol, and had refused to comply with repeated verbal instructions." Initially, we note the video showed no erratic driving by Plaintiff, but instead indicates she pulled off to the side of the road when the emergency lights of the officers' vehicles were activated. We also note, Officer Hadlock originally stated that Plaintiff crossed the centerline and ran a red

-6-

light on a stretch of road that was included on the videotape. However, the video showed no crossing of any centerline by Plaintiff, and revealed Plaintiff went through a yellow light as she was being followed by Officer Self's vehicle, which had its emergency lights activated. As the trial court indicated, Officer Hadlock later changed his testimony, saying Plaintiff crossed the centerline earlier than he previously stated. Officer Self attempted to rectify this contradiction by testifying the actual centerline infraction occurred in the brief moment when the video camera lost sight of the Plaintiff's vehicle. The trial court found these clarifications to have little merit, and believed they were a "desperate and a veiled attempt to align their words with the unbiased gaze of the camera's lens."

The testimony at trial also established that approximately five months prior to the incident, a male friend of Plaintiff filed a civilian complaint with the Many Police Department alleging nearly identical claims against Officer Hadlock. In that case, Plaintiff was a passenger in that vehicle and served as witness to the civilian complaint. When questioned about that earlier civilian complaint, Hadlock admitted that Officer Self, on the night in question in the instant case, reminded him who Plaintiff was when he recognized her as the driver of the truck.

Plaintiff acknowledged that after being pulled over she repeatedly refused the officers' commands to exit the vehicle. She stated she did so because she was scared of Officer Hadlock based upon the earlier complaint, and further stated she was aware of his reputation for aggressive behavior and had heard "even worse things" about Officer Self.

There is nothing in the record to establish that the officers had any known reason to believe Plaintiff was dangerous. The only previous knowledge Defendants had of Plaintiff was through her participation as a witness in the earlier civilian

complaint filed against Officer Hadlock.

The second *Kyle* factor is the risks and dangers faced by the officers. Defendants argue that Plaintiff initially stopped her vehicle, but then backed her truck up. They contend they were reasonable to believe that the truck was potentially a dangerous weapon. The trial court found Plaintiff "posed no physical threat whatsoever to the officers necessitating deployment of pepper spray" and the use of "pepper spray also doomed their opportunity to conduct a field sobriety test before the impartial eye of the camera giving their allegations of intoxication a chance at credibility." The trial court also noted that the other officers in the video, who arrived after the initial stop, but before Plaintiff was removed from the vehicle, "did not seem to share the same measure of concern over the Plaintiff."

We note that although Defendants claim they were concerned that Plaintiff's vehicle was potentially a dangerous weapon because she might back up in it, we find this concern was allayed when Defendants were standing next to the driver's side door. Further, the trial court also found, after being pepper sprayed, Plaintiff, in response to the continued directives from the officers to exit her vehicle, responded, "OK, I need a minute. . ." We also note the Plaintiff also stated "I'm fixing to step out" as she was being grabbed from her vehicle by the officers. As the trial court noted, Plaintiff was not given time to exit the vehicle, but was forcibly removed from her vehicle and taken to the ground. The video conforms the trial court's account of these events.

The third *Kyle* factor concerns the nature of the offenses involved. In this case, the officers charged Plaintiff with multiple traffic violations, including an alleged DWI. There was no indication that any weapons were involved, and it was reasonable to assume that the officers' apprehensions should have been allayed when

they were able to approach the vehicle without incident.

The next *Kyle* factor is the arrestee's chance of escape if particular means are not employed. The Defendants contended because Plaintiff was behind the wheel, the chance of escape was a legitimate concern. However, by the time the pepper spray was used, and Plaintiff was forcibly removed from her vehicle, other police had arrived at the scene and the Plaintiff's vehicle was blocked by the police units.

The fifth *Kyle* factor is the existence of alternative methods. Defendants contend since Plaintiff had locked her doors, the only alternative was to use pepper spray or bust the window. The trial court noted the officers could have attempted to pop the lock on the vehicle. We further would note the officers did not attempt to reason with Plaintiff in a less confrontational manner or simply wait a few more minutes.

The sixth *Kyle* factor is the physical size, strength and weaponry of the officers as compared to that of the arrestee. There were initially two police officers (the defendants), and eventually more. Plaintiff was female, alone and unarmed.

The last *Kyle* factor concerns the exigencies of the moment. Officers Self and Hadlock argue as long as Plaintiff was behind the wheel, she was essentially in possession of a dangerous weapon, and thus the situation was far from stable. Even accepting this argument as marginally providing justification for the officers' decision to use pepper spray, their actions in forcibly removing Plaintiff from the vehicle and throwing her to the ground after she verbally expressed intent to comply with the officers' command "in a minute" was unreasonable.

Under the circumstances shown here, the force used by Officers Self and Hadlock was excessive. The Plaintiff, although not complying with the officer's commands to exit the vehicle, presented little danger of harm or escape. We also note

the officers did not answer Plaintiff's question as to why she was pulled over. Although she was in her vehicle, Plaintiff had no real means of escape, as the vehicle was blocked in and other officers soon arrived on the scene. While reasonable minds may differ as to whether the officers' use of pepper spray was warranted, we fully agree with the trial court that following use of the pepper spray, Plaintiff, who verbally indicated she would then comply and exit the vehicle, was not given a reasonable time to do so. Rather than give Plaintiff the opportunity to compose herself, the officers forcibly grabbed her from the vehicle and threw her to the ground, placed a knee in her back and handcuffed her. The trial court also made a credibility determination in rejecting the account of the defendants that Plaintiff reached to her right after the pepper spray was applied. We find the record supports the trial court finding that "the brutality displayed was excessive and motivated by notions other than officer safety." Therefore, after reviewing the record and applicable law, we find the factfinder's conclusion, which involved credibility determinations by the trial judge, that the force used by the officers was excessive under the circumstances, was a reasonable one.

Defendants also contend the damages awarded by the trial court were excessive. To overturn the trial court's award there must be a showing that the trier of fact abused the great discretion accorded it in awarding damages. Simply put, the award must be so high or low in proportion to the injuries such that it "shocks the conscience." *Young v. Fitzpatrick*, 03-1038 (La.App. 3 Cir. 2/4/04), 865 So.2d 969; *Ross v. City of New Orleans*, 00-1879 (La.App. 4 Cir. 11/21/01), 808 So.2d 751; *Moore v. Healthcare Elmwood, Inc.*, 582 So.2d 871 (La.App. 5 Cir.1991). In deciding whether an award is excessive, appellate courts must consider the individual circumstances of the subject case to determine if the trier of fact abused its much

discretion in setting the award. Only after determining that the award was improper may the appellate court consider awards in previous, similar cases. *Kaufman v. Adrian's Tree Service, Inc.*, 00-2381 (La.App. 4 Cir. 10/31/01), 800 So.2d 1102; *Garcia v. Louisiana Dep't. of Transp. and Development*, 00-0930 (La.App. 4 Cir. 5/16/01), 787 So.2d 1142.

Defendants argue Plaintiff had numerous physical problems which predated the incident. The record conformed Plaintiff did have prior physical problems, but also indicated she was not seeing a physician during the period prior to the accident. Plaintiff also testified that the injuries she suffered from the accident exacerbated her prior medical problems. The trial court was presented with this evidence at trial, and concluded that Plaintiff did suffer compensable injuries such that an award of $20,000.00 was appropriate. After a thorough review of the record, we cannot say the trial court abused its great discretion in its award of damages.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against Defendants-Appellants.

**AFFIRMED.**