STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-1158


VANNA DARLENE MCMANUS, ETC.

VERSUS

STATE OF LA., DEPT. OF WILDLIFE AND FISHERIES, ET AL.


**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C-75,446  DIV. B
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Oswald A. Decuir, and Elizabeth A. Pickett, Judges.


**AFFIRMED.**

**Andrew E. Schaffer**
**Ronald J. Fiorenza**
**Provosty, Sadler, deLaunay, Fiorenza & Sobel**
**P. O. Drawer 1791**
**Alexandria, LA 71301-1791**
**(318) 445-3631**
**Counsel for Defendant-Appellant:**
        **State of Louisiana**

**James E. Calhoun**
**Assistant Attorney General**
**P. O. Box 1710**
**Alexandria, LA 71308-1710**
**(318) 487-5944**
**Counsel for Defendant-Appellant:**
        **State of Louisiana**

**T. Taylor Townsend**
**Keenan K. Kelly**
**Kelly & Townsend, L.L.C.**
**P. O. Box 756**
**Natchitoches, LA 71458-0756**
**(318) 352-2353**
**Counsel for Plaintiff-Appellee:**
  **Vanna Darlene McManus, etc.**

**PICKETT, Judge.**

The defendants, the State of Louisiana through its Department of Wildlife and Fisheries, which was found 25% at fault, and Department of Transportation and Development, which was found 75% at fault, appeal a judgment of the trial court, following a jury verdict, awarding the plaintiffs, Vanna D. McManus, individually and in her capacity as the provisional tutrix of her minor children, Dakota C. McManus and Loredo H. McManus, a total of $3,880,965.95 in connection with the drowning of Hugh McManus, the husband of Vanna and father of the minors. We affirm the judgment of the trial court.

## FACTS

On February 9, 2002, the decedent, Hugh McManus, went fishing with a friend, Stanley Neal. The two were in Mr. Neal's 15½ foot, V-hull, fiberglass, bass boat which was propelled by a 75 horse-power outboard motor. The two launched at the St. Maurice boat launch and proceeded up Saline Bayou to the Chivery Dam. They pulled up close to the dam, killed the motor, took off their life-vests, and began throwing cast nets in an attempt to catch shad. They believed that the current in the bayou would cause them to drift back down-stream as they cast. Their plan was to catch enough shad to use for bait and then go to Black Lake Dam where they were to meet Mr. Neal's father and another man; the four planned to fish from the bank near Black Lake Dam.

Although they believed that they would drift down-stream, because of water coming over the dam and their proximity to the structure when they stopped, they were actually pulled toward the dam. They only noticed this when the bow of the boat bumped against the dam and the boat began taking on water from the overflow

of the structure. The two abandoned the vessel without securing their life-vests. Mr. Neal was able to make it to shore by walking on top of the dam. Mr. McManus drowned.

There is no dispute as to the facts in this case. The decedent and a friend were engaged in a recreational activity, fishing, on a rural, navigable water-way. The two were cast-net fishing in close proximity to Chivery Dam. The dam was built by the State in 1934, and its ownership was vested in the Department of Wildlife and Fisheries. Inspection and maintenance of the dam was delegated to the Department of Transportation and Development (referred to collectively as the State). There were no warning signs posted in proximity to the dam warning that approaching within "X" number of feet was dangerous.

After the accident Mrs. McManus filed the instant suit. The case was tried to a jury which found the two State agencies wholly at fault. The State then perfected this appeal.

## LAW AND DISCUSSION

On appeal the State argues the following assignments of error:

1. The trial court legally erred in failing to grant the motion for summary judgment on behalf of the State, through DOTD and LDWF on the basis of the immunity afforded under La.[R.S.] 9:2795;

2. The jury erred, as a matter of law, in finding DOTD legally liable to Plaintiffs;

3. The jury erred, as a matter of law, in finding LDWF legally liable to Plaintiffs;

4. The jury erred, as a matter of law, in finding DOTD owed a legal duty to warn of the alleged dangerous condition that caused Decedent's death;

5. Alternatively, the trial court legally erred in instructing/inferring to the jury that DOTD, LDWF, and the State are the same entity;

2

6. Alternatively, the trial court legally erred in failing to properly instruct the jury regarding the applicability of La. R.S. 9:2795 and 9:2791;

7. Alternatively, the jury erred, as a matter of law, to the extent it failed to find that the Dam and the area [sic] surrounding area constituted a public park under La. R.S. 9:2795;

8. Alternatively, the jury erred, as a matter of law, to the extent it concluded that DOTD willfully or maliciously failed to warn against a dangerous condition under La. R.S. 9:2795;

9. Alternatively, the jury erred, as a matter of law, to the extent it concluded that LDWF willfully or maliciously failed to warn against a dangerous condition under La. R.S. 9:2795;

10. Alternatively, the jury erred, as a matter of law, to the extent it failed to apply La. R.S. 9:2791 to DOTD and/or LDWF;

11. Alternatively, the jury clearly erred in finding that a dangerous condition existed at the Dam on the date of the accident and that DOTD and/or LDWF had constructive knowledge of that dangerous condition and sufficient time to remediate condition under La. R.S. 9:2800.

In ten of its eleven allegations of error, the appellants argue there were errors of law requiring this court to undertake a de novo review of this case. Basically, the appellants argue that, based upon the statutory immunity conferred upon the defendants by La.R.S. 9:2791 and 2795, the trial court's failure to dismiss the case and the jury's finding of liability, both, amounted to legal error.

Louisiana Revised Statutes 9:2791 states in part (emphasis ours):

A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing, or boating or to give warning of any hazardous conditions, use of, structure, or activities on such premises to persons entering for such purposes, whether the hazardous condition or instrumentality causing the harm is one normally encountered in the true outdoors or one created by the placement of structures or conduct of commercial activities on the premises. If such an owner, lessee, or occupant gives permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is

3

owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.

B. This Section does not exclude any liability which would otherwise exist for deliberate and *willful* or malicious injury to persons or property, nor does it create any liability where such liability does not now exist.

Further, La.R.S. 9:2795 provides, in pertinent part, as follows (emphasis ours):

B. (1) Except for *willful* or malicious *failure to warn* against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:

(a) Extend any assurance that the premises are safe for any purposes.

We reject the State's immunity argument. There are two types of immunity, absolute immunity such as that conferred upon a judge acting in his/her judicial capacity [*see Viator v. Miller*, 04-1199 (La.App. 3 Cir. 4/27/05), 900 So.2d 1135], and qualified immunity such as that conferred upon government officials performing discretionary functions [*see Jackson v. State ex rel. Department of Corrections*, 00-2882 (La. 5/15/01), 785 So.2d 803]. The statutes at issue provide "qualified" immunity not "absolute" immunity—thus, whether or not the State was immune from suit called for the trier of fact to make a factual determination: whether, under the facts of this case, the statutes provided immunity. Thus, the linch-pin of this case rests on several factual determinations: (1)Was there a dangerous condition which presented an unreasonable risk of harm? (2) Did the State have actual or constructive knowledge of this condition and sufficient time to take remedial action? (3) Did the State have a duty to warn of the dangerous condition? (4) Was the State willful in its inaction?

4

In *Eisenhardt v. Snook*, 08-1287, pp. 5-6 (La. 3/17/09), 8 So.3d 541, 544-45, our supreme court stated:

> It is well-settled law that a landowner owes a duty to a plaintiff to discover any unreasonably dangerous conditions, and to either correct the condition or warn of its existence. *Socorro v. City of New Orleans*, 579 So.2d 931 (La.1991); *Shelton v. Aetna Casualty & Surety Co.*, 334 So.2d 406, 410 (La.1976).
>
> Nonetheless, we have recognized that defendants generally have no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a visitor as it was to the landowner. *Dauzat v. Curnest Guillot Logging, Inc.*, 08-0528 (La.12/2/08), 995 So.2d 1184; *Hutchinson v. Knights of Columbus*, 03-1533 at p. 9 (La.2/20/04), 866 So.2d 228, 234; *Pitre v. Louisiana Tech University*, 95-1466, 95-1487 at p. 11 (La.5/10/96), 673 So.2d 585, 591. It is the court's obligation [*i.e.*, the trier of fact] to decide which risks are unreasonable based upon the facts and circumstances of each case. *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364, 1371 (La.1984).

The foregoing makes it perfectly clear that this case turns on factual determinations. Therefore the case was not amenable to decision by summary judgment, and assignment number one is without merit.

*Eisenhardt* also makes it clear that if the trier of fact found that the condition at the dam constituted an unreasonable risk of harm, that the condition was not "open and obvious," and that there was a duty owed by the defendants to the plaintiffs. Thus, assignments of error numbers 2, 3, and 4 are without merit as they concern "matters of fact," not "matters of law."

5

Assignments of error numbers 5 and 6 deal with alleged errors in jury instructions. Uniform Rules, Courts of Appeal, Rule 1-3, states that issues not submitted to, and decided by, the trial court are not generally reviewable on appeal. Inasmuch as these issues were not presented to the trial court they are not properly before this court for review.

Alleged errors 7-10 are couched as errors of law. However, they, along with assignment 11, all deal with factual determinations made by the jury. In *Bullock v. The Rapides Foundation*, 06-26, pp. 4-5 (La.App. 3 Cir. 10/11/06), 941 So.2d 170, 174, *writs denied*, 06-2646 (La. 1/8/07), 948 So.2d 127, *and* 06-2703 (La. 1/8/07), 948 So.2d 132, this court stated:

> The manifest error standard of review is the proper standard to be applied in cases involving findings of unreasonable risks of harm or unreasonably dangerous defects. *Reed v. Wal-Mart Stores, Inc.*, 97-1174 (La. 3/4/98), 708 So.2d 362. Thus, an appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two-tiered test must be applied in order to reverse the findings of the trial court:

> > a. the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

> > b. the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

> *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987).

> Even where the appellate court believes its inferences are more reasonable than the fact finder's, reasonable determinations and inferences of fact should not be disturbed on appeal. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). Additionally, a reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housley v. Cerise*,

579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts.

In our review of the record, we find there was evidence presented of two similar occurrences (without injuries) at the dam., Neither incident was reportable since there were no injuries and no monetary damages. However, one incident involved David McAlpine, a 28-year veteran enforcement agent with the LDWF. He testified that he had been involved in exactly the same type of accident as happened in this case, and, had he not been able to reach down, grab a live-preserver, and get it on at the last second, he probably would have drowned. Mr. McAlpine also testified that John Bennett, who witnessed this accident had a similar experience and that over the years, as he patrolled near the dam, he had witnessed several other similar accidents. Although Mr. McAlpine did not formally "report" his or the other accidents, the fact that he was and is an agent of the LDWF can be construed as LDWF having constructive knowledge of the unreasonably dangerous condition at the dam.

The plaintiffs' expert witness, Dr. J. B. Turnmeyer, a Registered Professional Engineer, testified that, in respect to dams, the web-site of the DOTD states: "The owner/operator must avoid conduct or conditions that could injure any person, even those who trespass. If [some] condition exists that poses a danger, the dam owner or operator is responsible for correcting it or [. . .] posting warnings." Dr. Turnmeyer testified that from his examination of the documents, photographs, depositions, etc. provided to him. the dam presented a "hazardous and dangerous condition" on the day of the accident. He further stated that it was not possible to remedy the conditions and that the only alternative was to post adequate warnings such as signs,

7

buoys, or barricades. He testified that no warning devices were in place and that there was no evidence that they ever had been.

When questioned whether the dangerous conditions would be readily apparent to the average boater, he answered, "unless you've encountered that or you have training by the nature of knowing how to design dams and how the hydraulics work, there's really no reason for you to just be able to look at the water and know that that condition exists." And when asked his opinion as to whether the State should have known of the danger posed by the conditions at the dam, he stated: "certainly the one gentleman from the . . . [LDWF] knew because. . . he . . . experienced that problem at that location. And the . . . Water Resources Engineers . . . that are responsible for the operation and maintenance of that dam they should know."

Dr. Turnmeyer's testimony was unrefuted.

Considering Dr. Turnmeyer's testimony, the fact that Agent McAlpine not only witnessed a number of similar accidents, but also was the victim of one himself, that the DOTD web-site mandates the posting of warnings where "conditions exist that pose a danger," and that the dam had been in existence for over 70 years, we find that the jury was provided with a "reasonable factual basis" for finding that both, the Department of Wildlife and Fisheries and the Department of Transportation and Development, acted willfully in causing the plaintiff's damages. Both departments had, at the very least, constructive knowledge of the unreasonably dangerous conditions posed by water spilling over the dam, and both had more than ample time to post warnings of those conditions. Yet, both failed to take action.

8

## CONCLUSION

Accordingly, for the reasons stated, the judgment of the trial court is affirmed. The costs of this appeal, $5,974.05, are assessed 25% to the Department of Wildlife and Fisheries and 75% to the Department of Transportation and Development.

**AFFIRMED.**