# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-1539

**CALVIN DALE MILLER**

**VERSUS**

**VILLAGE OF HORNBECK, ET AL.**

**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 60939
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

**SHANNON J. GREMILLION**
**JUDGE**

**********

Court composed of Oswald A. Decuir, James T. Genovese, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**James Lynn Davis**
**Attorney at Law**
**P. O. Box 780**
**Many, LA 71449**
**(318) 256-9299**
**Counsel for Plaintiff/Appellee:**
**Calvin Dale Miller**

**John Mark Miller**
**Stamey & Miller, LLC**
**P. O. Drawer 1288**
**Natchitoches, LA 71458**
**(318) 352-4559**
**Counsel for Defendant/Appellant:**
**Village of Hornbeck**
**Kenneth Hatchett, Jr.**
**Andy Mitchell**

**GREMILLION, Judge.**

The defendants, Village of Hornbeck, Kenneth Hatchett, Jr., and Andy Mitchell, appeal the trial court's judgment awarding the plaintiff, Calvin Miller, $25,000 in damages for violating his civil liberties and personal injury following a traffic stop for speeding. Miller answered the appeal, arguing that the damage award was abusively low and requesting an award for frivolous appeal. For the following reasons, we affirm the trial court's judgment, deny any increase in general damages, and deny damages for frivolous appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

Miller filed suit in Sabine Parish in June 2008 claiming that he was severely injured and unreasonably humiliated following a traffic stop on July 13, 2007, conducted by Officers Hatchett and Mitchell of the Village of Hornbeck Police Department. Miller, who was sixty-seven years old at the time of this incident, was driving his 18-wheeler log truck on his way home to Florien, Louisiana when he was stopped at approximately 5:30 p.m. as he was traveling north on U.S. Highway 171 leaving Hornbeck. Miller was arrested for resisting arrest and transported to the Vernon Parish jail. After his wife posted bond, Miller went to the emergency room where x-rays were taken of both of his wrists. A 4.0 by 2.5 centimeter abrasion to his head with swelling and bruising was noted on his chart.

Defendants filed a declinatory exception of improper venue arguing that venue was not proper in Sabine Parish. Following a hearing on the exception, it was denied. Defendants filed a motion for summary judgment in May 2010, which was subsequently denied following a hearing. Miller filed a first amending and supplemental petition in June 2010. A bench trial was held in July 2010. The trial

1

court found defendants 100% at fault for Miller's injuries and found that Officers

Hatchett and Mitchell used excessive force. The trial court awarded Miller $25,000

in damages. The defendants now appeal and assign as error:

> 1. The trial court erred as a matter of law by failing to determine whether the defendant officers were entitled to qualified immunity prior to finding that Plaintiff's civil liberties were violated as a result of an unlawful traffic stop, arrest and excessive force.

> 2. The trial court erred as a matter of law by failing to apply the correct legal standard of "reasonable suspicion" for a traffic stop and further, the trial court was clearly wrong in its factual determination that Plaintiff's civil liberties were violated as a result of an unlawful traffic stop.

> 3. The trial court erred as a matter of law by failing to apply the correct legal standard of "probable cause" for an arrest and further, the trial court was clearly wrong in its factual determination that Plaintiff's civil liberties were violated as a result of an unlawful arrest.

> 4. The trial court erred as a matter of law by failing to determine whether the defendant officers were entitled to qualified immunity prior to finding that Plaintiff's civil liberties were violated through excessive force.

> 5. The trial court was clearly wrong regarding its factual determination that the defendant officers used excessive force given Plaintiff's actions of defiance, refusal to cooperate, resisting arrest and acts of aggression as perceived from an on-scene perspective.

> 6. Alternatively, the trial court erred as a matter of law by failing to determine comparative liability in its assessment of excessive force and further, the trial court was clearly wrong in its factual determination that Plaintiff was zero (0%) percent at fault.

> 7. Alternatively, the trial court was clearly wrong in awarding an excessive amount of general damages in the amount of $25,000.00

Miller answered the appeal and asserts that the general damages award was

abusively low and that he is entitled to damages for frivolous appeal.

2

# DISCUSSION

## Qualified Immunity and Excessive Force

Defendants argue that the trial court legally erred in "ignoring and failing to apply qualified immunity in its assessment of liability." Defendants further argue that the officers were entitled to qualified immunity "prior to finding that plaintiff's civil liberties were violated as the result of an alleged unlawful traffic stop, unlawful arrest and excessive force." Our review of the record indicates that the trial court did not expressly discuss the issue of qualified immunity, but, implicitly, it did not find the officers were entitled to qualified immunity.

Louisiana Revised Statute 9:2798.1 governs.[1] Officers Hatchett and Mitchell were clearly officers of a public entity as contemplated by the statute. However, the immunity provided for is not applicable to the officers if their actions

---

[1]

A. As used in this Section, "public entity" means and includes the state and any of its branches, department, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.

B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

C. The provisions of Subsection B of this section are not applicable:

(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or

(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

D. The legislature finds and states that the purpose of this Section is not reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.

3

constituted "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." La.R.S. 9:2798.1(C)(2).

Government officials are entitled to qualified immunity when performing discretionary functions. *McManus v. State of La., Dep't of Wildlife and Fisheries*, 09-1158 (La.App. 3 Cir. 3/10/10), 33 So.3d 412*, writ denied,* 10-816 (La. 6/18/10), 38 So.2d 323; *Jackson v. State of La., Dep't of Corrs.*, 00-2882 (La. 5/15/01), 785 So.2d 803. The trier of fact determines whether, under the facts of the particular case, the officers are entitled to immunity. *McManus,* 33 So.2d 412. Although the trial court did not discuss La.R.S. 9:2798.1 in its reasons, it did make the following findings:

> 1. Officers used excessive force without justification on Plaintiff during the subject routine traffic stop and are one hundred percent (100%) at fault for all of Plaintiff's injuries,
>
> 2. Said excessive force used by Officers Hatchett and Mitchell was the legal cause of Plaintiff's damages,
>
> 3. Plaintiff is zero percent (0%) at fault for his injuries,
>
> 4. Plaintiff, when taken down by the officers, tried keeping his head and glasses from the roadway. That when the Plaintiff exclaimed that the officers were hurting him, one of the two officers intentionally pushed his head into the concrete alert line of the roadway.

Based upon these findings, we conclude that the trial court's basis for not granting immunity in this case was based upon La.R.S. 9:2798.1(C)(2). The record before us contains evidence that would allow a reasonable factfinder to conclude that the officers' actions were "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." *Id.*

Apart from qualified immunity, Defendants' first five assignments of error essentially boil down to whether the trial court erred in finding that the officers used excessive force. Defendants argue that the traffic stop and arrest were lawful.

4

The trial court did state in its written reasons for judgment that the defendants are liable to Miller for "all damages arising from said unlawful traffic stop and arrest." The issues of whether the stop or arrest were lawful are moot. Even assuming that the trial court erred in so finding, we find no manifest error in its finding that the officers used excessive force in effectuating the arrest. An officer "may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained." La.Code Crim.P. art. 220. Whether the officers had reasonable suspicion to detain Miller or probable cause to arrest him is of no moment. It is clear that regardless of whether reasonable suspicion exists to stop or probable cause exists to detain, "the use of excessive force in effecting the arrest becomes an actionable claim for damages." *Zerbe v. Town of Carencro,* 04-422, p. 7 (La.App. 3 Cir. 10/6/04), 884 So.2d 1224, 1228, *writs denied,* 04-2719, 04-2735 (La. 1/14/05), 889 So.2d 270, 271, and citing *Penn v. St. Tammany Sheriff's Office,* 02-893 (La.App. 1 Cir. 4/2/03), 843 So.2d 1157, and *Kyle v. City of New Orleans,* 353 So.2d 969 (La.1977); *see also Patton v. Self,* 06-1029 (La.App. 3 Cir. 3/7/07), 952 So.2d 874. "Excessive force transforms ordinarily protected use of force into an actionable battery, rendering the defendant officer and his employer liable for damages." *Penn v. St. Tammany Parish Sheriff's Office,* 843 So.2d at 1161. We have addressed the standard of review in such cases:

> A determination of excessive or unnecessary force is a finding of fact which may not be disturbed unless: (1) the record evidence does not furnish a sufficient basis for the finding; or (2) that finding is clearly wrong. *See Arceneaux v. Domingue,* 365 So.2d 1330 (La.1978), *Saucier v. Players Lake Charles, LLC,* 99-1196 (La.App. 3 Cir. 12/22/99), 751 So.2d 312. In *Kyle v. City of New Orleans,* 353 So.2d 969 (La.1977), the supreme court set forth several factors to consider in making a determination of whether the force used by a police officer to effect an arrest was reasonable under the circumstances. The factors include: (1) the known character of the arrestee; (2) the risks and dangers faced by

5

the officer; (3) the nature of the offense or behavior involved; (4) the chance of escape if the particular means are not employed; (5) the existence of alternative methods of arrest or subduing the arrestee; (6) the physical size, strength or weaponry of the officers as compared to that of the arrestee; and (7) the exigencies of the moment.

*Patton,* 952 So.2d 874, 878.

Miller testified that on the date of the incident he was sixty-seven years old, five foot six inches tall, and weighed 165 pounds. He stated that he buys, cuts, and hauls timber in his 18-wheeler and has been doing so since he was twenty-five years old. Miller testified that he was northbound on U.S. Highway 171, at approximately 5:15 p.m., headed to his home, which was approximately nine miles from where he was pulled over. Miller said that he knew the posted speed limit in Hornbeck was forty miles per hour because he has driven through Hornbeck for forty-seven years. Miller stated that he began picking up speed once he was "right at" the fifty-five mile per hour sign. He testified that he was not exceeding the posted speed limit.

After being pulled over, Miller said that he got out of his truck and asked the officers what the problem was. He said that he told the officers that when he sees the 55-mile- per-hour sign in plain sight he begins picking up his speed and that the officer responded that he "lacked about 100 feet," meaning that he was one hundred feet premature in speeding up his vehicle. Next, Miller stated that the officer told him to produce his license and insurance certificate. Miller testified:

> I told him I didn't believe. I said I wasn't speeding, and uh, his next words were-everything was fine until then-his next words were, Officer Hatchett said I can see right now you're going to need an attitude adjustment. And that's when he made me mad.

> Q. Then what happened?

> A. Well, after some talking–I did punch my right fist in my left hand, but

I never was aggressive to either officer. I know better than that. But it did make me mad. A couple of young men telling a sixty-seven year old man that I need an attitude– there wasn't nothing wrong with my attitude at the time that we stopped, but when he said I needed an attitude adjustment, yeah, it made me mad. And, uh, and then I told him [I]was going to go home–go get in my truck and go home, and I turned my back on them and that's when they bound me on the concrete and I told them they were hurting me. And one of them then pushed my head down into the alert line and busted my head, and, uh, then they put the handcuffs on me. They put me in the car and I told them they needed to loosen my handcuffs on the right, it was hurting me. And Officer Hatchett said it will stay like it is, and uh, that's what happened.

Thereafter, Miller testified that he was taken to jail. After his wife posted bond for him, Miller went to Byrd Regional Hospital. Photographs taken by hospital staff show a gash on Miller's head with blood running down his forehead and blood around his wrist. He stated that x-rays were taken of his arm and wrist. He further testified that he was treated by his family physician, Dr. Jack Corley, on three occasions in July and August 2007 for his injuries. He testified that all of his injuries were resolved by the time of trial but that he was sore and hurting all over for a couple of weeks following the incident and that he missed two weeks of work. Miller said that he was embarrassed "beyond belief" over this incident and that he has never been to jail or been handcuffed before. He stated that the incident became common knowledge in the area and that he was teased about it by friends and even at his church.

Miller admitted refusing to produce his driver's license, registration, and proof of insurance. He further admitted telling the officers "It's not happening today." He admitted that he intended to leave the traffic stop because of the way he was treated by the officers. Miller stated that he made no aggressive moves toward the officers, but he admitted that he did not have any respect for the officers, whom he referred to as "smart-alecks."

Miller's wife, Janet, testified that when she went to pick her husband up at the police station she inquired of the two officers what had happened and that Officer Hatchett responded that Miller had turned his back and "You don't turn your back on a cop." She further testified that Officer Mitchell showed her his skinned knee as a result of the incident. Photographs that Janet took about a week following the incident were introduced into evidence. They show moderate to severe bruising on Miller's arm. Janet also took some pictures at trial of her husband standing next to Offficers Hatchett and Mitchell. Both officers appear young and physically fit, with Officer Hatchett towering over Miller while Officer Mitchell is only slightly taller than Miller.

Officer Andrew Mitchell testified that he was nineteen years old at the time of the incident. He stated that, at the time, he was not working full-time for the Village of Hornbeck but was a reserve officer. He said that he was required to work with a certified officer and was considered a volunteer in that he was not paid. He stated that prior to the incident he had received no classroom training. Officer Mitchell was allowed to carry a gun. Regarding the physical confrontation, Officer Mitchell testified that when Miller began to walk toward his truck, Mitchell told him to "please stop," and that Miller turned around and was "looking at us eyeball to eyeball, you know, staring us down." Officer Mitchell said he was scared and nervous because he did not know how Miller would react. Officer Mitchell claimed that neither he nor Officer Hatchett shoved Miller's head into the concrete alert on the shoulder of the road. He testified that he did not know how Miller's head came into contact with the concrete. Officer Mitchell further claimed that he did not hear Miller state that the officers were hurting him, nor did he hear Officer Hatchett tell

8

Miller that he needed an "attitude adjustment." Officer Mitchell admitted showing Janet his skinned knee.

Officer Hatchett testified that he completed the Alexandria Regional Police Academy in November 2002. He worked as a police officer part-time for the Village of Hornbeck and also at Fort Polk as a federal police officer. Officer Hatchett considered Miller's act of punching his own fist to be an act of aggression. Officer Hatchett testified that Miller was approaching him and Mitchell. Officer Hatchett said that he "grabbed [Miller's] arm in a straight arm bar take down." He said that Miller's head hit the ground as he was being taken down. Officer Hatchett stated that Miller was being belligerent in that he was not cooperating in identifying himself and that he was "giving us a real bad look and then he started towards us." He denied ever having told Miller that he needed an "attitude adjustment." He further denied ever having any other formal complaints made against him.

The trial court issued extensive and compelling reasons for its findings noting its unique role in determining the credibility of the witnesses:

> At the time of the incident, the officers either had no dashboard mounted video camera or, if they did, did not activate it. Therefore, this court must weigh the credibility of the testimony as well as of those testifying as to what did or did not occur based upon consistency of testimony, body language, voice modulation and inflection and factual trustworthiness as only this court, as fact finder in this case, can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is being said.
>
> . . . .
>
> [T]he nature of the offense has not become any more serious than a mere routine traffic stop for speeding, a citation-only offense with no requirement that the offender to be taken into custody. There was no testimony that suggested any exigent circumstances existed throughout the exchange that dictated a heightened caution in the reason, manner and execution of the stop. Officers Hatchett and Mitchell had the considerable advantage of youth, height, weight and weaponry over

9

Miller. There was no testimony that Miller, at any time during the altercation, brandished or was perceived to possess a weapon. Although Miller was attempting to leave the scene, the stop did not require taking him into custody. While there may have been an alternative method of arrest short of taking Miller to the ground, the officers' choice to blindly react to the said "act of aggression" by Miller was unreasonable as the officers ignored the clear advantage they had over him. . . . Officers Hatchett and Mitchell faced no risks or dangers as the physical advantage they had over Miller remained. . . . .The officers never testified that Miller presented any degree of fear for their safety, but only reiterated that Miller's weaponless fist-hand gesture was enough to trigger their knee-jerk response to effect a take-down. This court finds the officers' justification defense weak and unconvincing given their testimony and the totality of the circumstances.

Having reviewed the record and the facts and circumstances of this case, we find no manifest error in the trial court's finding that Officers Hatchett and Mitchell used excessive force in effectuating Miller's arrest and in intentionally pushing him into the concrete alert line. Further, a review of the *Kyle* factors and the totality of the circumstances support the trial court's finding that the two young armed officers faced little or no risks from Miller for his crime of "speeding" (assuming it to be true) shortly before he actually reached the fifty-five-mile-per-hour sign. There is no error in the finding that the force used was excessive and not motivated by officer safety, but to adjust Miller's attitude. Clearly, the trial court found Miller's testimony—that the officers' pushed him to the ground from behind and intentionally pushed his face into the concrete alert area after he told them that they were hurting him and after he was already on the ground—is a credibility determination that we will not disturb. Accordingly, the Defendants are not entitled to qualified immunity. Defendants' assignments of error one through five are without merit.

**COMPARATIVE FAULT**

Defendants argue it was error for the trial court not to apportion fault to Miller. In *Layssard v. State, Dep't of Public Safety & Corrs.*, 07-78, p. 3 (La.App.

10

3 Cir. 8/8/07), 963 So.2d 1053, 1057, *writ denied*, 07-1821 (La.11/9/07), 967 So.2d 511, the standard of review for a trier of fact's apportionment of fault was stated as follows:

> The Louisiana Supreme Court, in *Duncan v. Kansas City Southern Railway Co.*, 00-66, pp. 10-11 (La.10/30/00), 773 So.2d 670, 680-81, set forth the standard for reviewing comparative fault determinations as follows:
>
>> This Court has previously addressed the allocation of fault and the standard of review to be applied by appellate courts reviewing such determinations. Finding the same considerations applicable to the fault allocation process as are applied in quantum assessments, we concluded "the trier of fact is owed some deference in allocating fault" since the finding of percentages of fault is also a factual determination. *Clement v. Frey*, 95-1119 (La.1/16/96), 666 So.2d 607, 609, 610. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. *Id.*

Having carefully reviewed the record, we find no manifest error. This assignment of error is without merit.

## DAMAGES

The trial court awarded Miller $25,000 in general damages. Defendants argue this amount is excessive while Miller argues it is insufficient. The trial court's findings are accorded great weight when reviewing a general damage award and should rarely be disturbed absent a showing of clear abuse of discretion. *Andrus v. State Farm Mutual Auto Ins. Co.*, 95-0801 (La. 3/22/96), 670 So.2d 1206. Thus, we must determine whether the trial court's award "is, in *either direction,* beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances" before we may adjust the award. *Id.* at 1210. We find no abuse of discretion in the amount awarded by the trial court and it will not be disturbed.

11

**FRIVOLOUS APPEAL**

Louisiana Code of Civil Procedure Article 2164 provides that an appellate court may award damages for frivolous appeal. However, damages for frivolous appeal will not be awarded unless it appears that the appeal was taken solely for the purpose of delay, that serious legal questions are not raised, or that the attorney does not seriously believe in the position he advocates. *Robinson v. Thornton,* 96-1329 (La.App. 3 Cir. 10/29/07), 705 So.2d 745*, writ denied*, 97-2963 (La. 2/6/98), 709 So.2d 739. Considering the facts before us, we do not find any of these circumstances applicable to this case and decline to award damages for frivolous appeal.

**CONCLUSION**

The judgment of the trial court in favor of the plaintiff, Calvin Miller, is affirmed. Plaintiff's request for an increase in general damages and for damages for frivolous appeal are denied. All costs of this appeal are assessed against the defendants, Village of Hornbeck, Kenneth Hatchett, Jr., and Andy Mitchell.

**AFFIRMED.**